**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERRENCE LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 4:17-cv-02467-AGF |
| | ) | |
| BURLINGTON STORES, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DECLARATION OF YAZMIN HAMILTON</u>**

I, Yazmin Hamilton, declare and state as follows:

1.      I am over the age of eighteen (18) and am competent to make this Declaration.

2.      I have personal knowledge of the facts set forth in this Declaration, except where stated otherwise and, if called as a witness, I could and would competently testify thereto.

3.      I am currently employed by Burlington Coat Factory Warehouse Corporation as a Senior Associate Relations Manager.  I have been employed by Burlington Coat Factory Warehouse Corporation since May 2011 through the present.  I have held the position of Senior Associate Relations Manager since April 2016.  In my role as the Senior Associate Relations Manager, my job duties include managing national employment law compliance and associate relations, including investigations, case management, and dispute resolution for Burlington Stores, Inc. and its subsidiaries, including Burlington Coat Factory of Missouri, LLC, the entity that employed Plaintiff Terrence Lee ("Lee").[1]  My job duties also include overseeing the STEPS program.  STEPS is an acronym that stands for "Steps To Effective Problem Solving".  Prior to my current role, I held the position of National Compliance Manager from April 2013 through

---

[1] For purposes of this Declaration, "Burlington" or the "Company" shall refer to Burlington Stores, Inc., and Burlington Coat Factory of Missouri, LLC, collectively.

April 2016.  My job duties in that role included administering and assisting with overseeing the STEPS program, including the roll-out of the STEPS program to Company store employees. Prior to that position, between May 2011 and April 2013, I worked as the California Compliance Manager overseeing human resources ("HR") issues for all California employees.  All of my positions with the Company have been within the Company's HR Department.

4.      In my role as the Senior Associate Relations Manager (and in my previous role as National Compliance Manager), I am familiar with and have access to the Company's public filings and business records, such as Securities and Exchange Commission ("SEC') filings, personnel files and employees' employment information and records (including, title, duties, dates of employment, assignment dates, wage rates and increases, performance evaluations, disciplinary actions taken, onboarding and separation documentation, STEPS program documentation, and opt-out forms, among other information), which are created at or near the time of relevant events, regularly created as part of the Company's practices and employees' employment, and maintained in the ordinary course of business.  I have regularly created, maintained, and referenced such business records and information and have found these record-keeping practices to be accurate and trustworthy.  As a custodian of records, the business records I reviewed for purposes of this Declaration include relevant portions of the Company's public filings with the SEC, the personnel file and employment records that the Company maintains for Lee, which included all exhibits referenced and attached to this Declaration unless specifically stated otherwise.  In my current and prior positions, I am also familiar with the Company's policies and procedures, including those contained in the Company's employee handbooks and STEPS program documents.

5.     Based on my job duties and experience holding various positions with the Company, as described in paragraph 3 above, and independently, my review of relevant sections of Burlington Stores, Inc.'s Form 10-K for fiscal year 2015 filed with the SEC, and communications with corporate level employees at the Company, Burlington Stores, Inc. was, during the relevant time period, the indirect parent company of Plaintiff's former employer, Burlington Coat Factory of Missouri, LLC.  Indeed, Burlington Coat Factory of Missouri, LLC is listed as a subsidiary of Burlington Stores, Inc. in the Form 10-K for fiscal year 2015.  A true and correct copy of relevant excerpts from Burlington Stores, Inc.'s Form 10-K for fiscal year 2015 is attached to this Declaration as Exhibit A.  The headquarters of Burlington Stores, Inc. and its subsidiaries is in Burlington, New Jersey.

6.     Burlington is an off-price retailer of apparel, home and baby products.  The Company operates throughout the United States and Puerto Rico.  Burlington's operations involve the purchase and use of goods and services, equipment, and other items and supplies from numerous manufacturers, suppliers, and distributors, which in turn, are regularly transported across state lines.  Burlington employees routinely communicate with other employees, vendors or other third parties in other states.  Burlington also sells products and/or makes advertising materials available in various States, including but not limited to Missouri.

### *Burlington's STEPS Program*

7.     In July 2014, the Company created and rolled-out the STEPS program to all store employees.  STEPS was designed to provide multiple opportunities to resolve almost any type of individual workplace dispute.  In the event that an employee has or develops concerns related to his or her employment, the STEPS program provides ways for the employee's concerns to be heard and resolved.  The key to STEPS is early dispute resolution, which helps to preserve work

relationships, upholds the Company's Core Values, exercises transparency with open and honest two-way communication, and fosters a work environment that supports both individual and Company success.

8.      The STEPS program provides employees a way to express their concerns and resolve workplace issues using a structured, unbiased, and fair process.  The program is built on three (3) key steps an employee may take in order to have any issues or concerns resolved.

9.      In Step 1 (Open Door), employees are encouraged to discuss their concerns with their supervisor or Human Resources Representative who will work to understand and resolve any workplace issues.

10.     In Step 2 (Request for Reconsideration), when workplace issues are not resolved in Step 1 (or if Step 1 was not utilized), employees can submit a written request for reconsideration to the STEPS Program Administrator.  Once a request for reconsideration is received, the issue is referred to an appropriate Human Resources or Associate Relations executive who was not involved at Step 1 (if the employee sought Step 1 review) who will then conduct an independent review of the employee's concern.  Following the completion of the investigation, a decision will be made to either uphold the initial decision or modify it, in whole or in part.

11.     In Step 3 (Arbitration), when an issue was not resolved using Step 1 or Step 2 (whether or not both Steps were utilized), employees may request arbitration to resolve claims involving legally protected rights (that is, claims that an individual could obtain relief in a court or other adjudicatory body) in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect. Employees are not required to go through Step 1 (Open Door) or Step 2 (Request for Reconsideration), and if they wish, they can proceed

directly to Step 3 (Arbitration).

12.     All Burlington store employees are automatically enrolled in the STEPS program; however, all store employees have the choice to opt-out of Step 3 (Arbitration).  If an employee does not choose to opt-out of Step 3 (Arbitration) within the prescribed time period and continues to work for Burlington, he or she will be covered by the arbitration program throughout his or her employment with Burlington, and beyond employment should he or she leave the Company.

13.     The STEPS program requires employees, unless they choose to opt-out, to arbitrate all of their individual claims arising from their employment with the Company (with the exception of claims for workers' compensation benefits, state disability benefits, and unemployment insurance benefits).

14.     All store employees hired after the initial roll-out of the STEPS program in July 2014 received information and documentation related to the STEPS program through Burlington's electronic hiring and onboarding process.

15.     From my review of Lee's employment records and the Company's business records, Lee was employed by Burlington as a Receiving Supervisor at the Chesterfield, Missouri store (Store No. 964) from August 10, 2015 until his employment was terminated on November 5, 2015.  Therefore, Lee received information and documentation related to the STEPS program through Burlington's electronic hiring and onboarding process.

### *Burlington's Electronic Hiring and Onboarding Process*

16.     With the exception of phone and in-person applicant interviews, Burlington's entire hiring and onboarding process is completed and managed electronically.  Applicants

submit their employment application online and provide a personal email address to which Burlington sends information related to the hiring and onboarding process.

17.     Once an applicant successfully completes a background check and is formally hired by Burlington, he or she is required to sign into Burlington's human resources employee management system – known as Workday – using a unique log-in username and password to obtain important information about working at Burlington and to receive, review, and complete all new hire documentation through the Workday electronic onboarding system.

18.     The Workday onboarding process begins by Workday sending two separate system-generated emails to the new employee's previously-provided personal email address. The first email provides the new employee with his or her unique Workday log-in username. The second email provides a temporary initial password, a link to the Workday electronic onboarding sign-in page, and an instruction to create a new and permanent password after the initial sign-in.

19.     Workday usernames are never reused, so no two employees could ever have the same Workday username.  Employees set their own confidential password, and Burlington does not have access to these passwords or otherwise maintain a record of employees' Workday passwords.  Burlington instructs its employees to keep their Workday password confidential.

20.     An employee may complete the new hire onboarding process from any computer with internet access, including on a Burlington store computer terminal.

21.     Upon logging into Workday with the unique username and password, an employee is prompted to begin the onboarding process and is taken to the "Welcome to Burlington" page.  A true and correct copy of the "Workday New Hire Onboarding Welcome Page," is attached to this Declaration as Exhibit B.  The "Welcome" page includes the "Your

Onboarding Checklist" which contains several tasks a new employee is to complete on or before his or her first day.  *See* Exhibit B.

22.     The "Welcome" page also contains a column titled "Getting Started" which includes a link that introduces all new employees to Burlington's STEPS program.  *See* Exhibit B.  The "Welcome" page encourages all new hires to review the information in the "Getting Started" section before selecting the Onboarding Checklist.  *See* Exhibit B.

23.     When a new hire clicks on the STEPS link on the "Welcome" page, he or she will receive an overview of what the STEPS program is and the benefits it provides to all employees.  A true and correct copy of the "STEPS Introduction on Welcome Page" is attached to this Declaration as Exhibit C.

24.     The STEPS link on the "Welcome" page states, in relevant part:

> Legal claims are resolved by an arbitrator from the American Arbitration Association (AAA), the largest provider of early dispute resolution services in the United States, rather than by a judge or jury in a court.  Unless you choose to opt-out of the arbitration program within the prescribed time period, you are covered by the arbitration program throughout your employment with Burlington, and after employment should you leave the company.

*See* Exhibit C.

25.     The STEPS link on the "Welcome" page further provides:

> Later on in your electronic onboarding process you will receive more detailed information about the Burlington Stores, Inc.'s Early Dispute Resolution Program Rules and Procedures, which is a comprehensive description of the STEPS program.  To learn more, an eCourse is available to you in our LMS (Learning Management System) or you can speak with your Human Resources Representative.  Our door is always open.

*See* Exhibit C.

26.     The employee must then click on the "Your Onboarding Checklist" and complete every task.  The employee first verifies certain personal and contact information.  The employee is then presented with several important documents for review and electronic acknowledgement of receipt, including the STEPS Program Materials.  A true and correct copy of the "Review Documents Page" is attached to this Declaration as Exhibit D.  The top of the Review Documents page states, in relevant part:  "Below are several important documents related to your employment with Burlington.  Please review all of the documents carefully."  *See* Exhibit D.

27.     All documents presented to a new employee during Workday onboarding, including the STEPS Program Materials, can be easily accessed and reviewed by the new employee directly in Workday onboarding in .pdf format by clicking on the designated link. *See* Exhibit D.

28.     In addition, Burlington specifically informs new employees at the top of the Review Documents page that all documents presented during Workday onboarding can be saved to the employee's personal computer or printed out for further review and future reference.  *See* Exhibit D.   The Review Documents page also advises new employees that they can access all documents received and acknowledged during onboarding by signing into Workday at any time after beginning their employment.  *See* Exhibit D.

### *The STEPS Program Materials Provided To New Employees During Onboarding*

29.     The STEPS Program Materials provided to new employees during Workday onboarding include: (a) an introduction letter from Joyce Manning, Burlington's Executive Vice President of Human Resources, (b) a STEPS Program brochure, (c) the Burlington Stores, Inc.'s Early Dispute Resolution Program Rules & Procedures, and (d) the arbitration Opt-Out Form.

A true and correct copy of the "STEPS Program Materials" is attached to this Declaration as Exhibit E.  The content of each of these documents is explained below.

30.     The introduction letter provides new employees with an overview of the STEPS program, highlights the benefits it provides for employees to have their concerns heard and resolved, and emphasizes that employees drive the process to achieve resolution.  The letter also states, in relevant part:

> Unless you choose to opt-out of the arbitration program within the prescribed time period, you are covered by the arbitration program throughout your employment with Burlington, and after employment should you leave the company.

*See* Exhibit E, page 1.

31.     The STEPS program brochure also provides a new employee with a brief overview of the STEPS program, outlines the three steps available to employees to resolve concerns, and highlights several locations where an employee can obtain additional information about the program.  *See* Exhibit E, page 2.

32.     Burlington Stores, Inc.'s Early Dispute Resolution Program Rules & Procedures ("Program Rules & Procedures") provide a new employee with an easy to understand explanation of the three steps of the STEPS program, discuss the rules and procedures that govern all arbitration proceedings, and outline the steps a new employee must take should he or she wish to opt-out of arbitration.  *See* Exhibit E, pages 3-13.

33.     The arbitration requirement is mutual and binding on <u>both</u> Burlington and the employee, so long as the employee does not opt-out of arbitration.  To the extent Burlington wishes to pursue a legal claim against an employee, Burlington is required to arbitrate such a claim.  *See* Exhibit E at Pages 1-2 of the Program Rules & Procedures.

34.     Burlington pays all of the costs and expenses related to the arbitration process. *See* Exhibit E at Paragraph 7 of the Program Rules & Procedures.

35.     In addition, Burlington contributes up to $1,500 to assist an employee with attorneys' fees and incidental costs associated with the arbitration.  *See* Exhibit E at Paragraph 7 of the Program Rules & Procedures.

36.     Under the Program Rules & Procedures, Burlington does not have the ability to unilaterally or retroactively change any of the rules or its obligations under the program.

### *Employees Have The Ability To Opt-Out Of Arbitration And* *Are Repeatedly Informed About This Ability During New Hire Onboarding*

37.     Burlington's arbitration program is **not** mandatory.  Rather, Burlington provides its employees with the ability to opt-out of arbitration if they wish to do so.  The Program Rules & Procedures state, in several different locations, that an employee can opt-out of Step 3 Arbitration by completing and timely submitting an arbitration Opt-Out Form, which is included in the new hire STEPS Program Materials.  *See* Exhibit E, page 14.

38.     Paragraph 15 of the Program Rules & Procedures, titled "Your Right to Opt Out of Arbitration," details an employee's right to opt-out, the steps that a new employee must take to opt-out, the timeframe for doing so, and the fact that there will be no adverse employment action taken if the employee decides to opt-out of arbitration.  *See* Exhibit E at Paragraph 15 of the Program Rules & Procedures.  As set forth in Paragraph 15, in order to opt-out of arbitration, the following action must be taken:

> If you want to opt-out, you must notify the Company of your intention to opt out by submitting a signed and dated "Arbitration Opt-Out Form" (contained in the packet in which you received these Program Rules and Procedures and available on the Company's web portal under the Human Resources tab) to the STEPS Office Program Administrator, 1830 Route 130 North, Burlington, New Jersey 08016.  In order to be effective, your

>Arbitration Opt-Out Form must be postmarked within 30 days of
>your receipt of these Step 3: Arbitration Rules and Procedures.

*See* Exhibit E at Paragraph 15 of the Program Rules & Procedures.

39.    There are at least four ways for an employee to obtain an arbitration Opt-Out Form.  First, Burlington provides the arbitration Opt-Out Form in the new hire STEPS Program Materials.  Second, the arbitration Opt-Out Form is available on Burlington's employee portal. Third, easy access to the Opt-Out Form is provided during the STEPS eCourse .  Fourth, the Opt-Out Form can be obtained by requesting a copy from management or human resources personnel.

40.    To the extent a new employee timely opts-out of arbitration by completing and returning the arbitration Opt-Out Form, Burlington maintains a hard copy and electronic copy of the opt-out form the employee completed and returned to the Company. In addition, Burlington thereafter sends a letter to the employee confirming its receipt of the employee's opt-out form and informing the employee that he or she was not covered by Step 3 (Arbitration) of the STEPS program.  The opt-out form specifically informs employees who submit the opt-out form that they will receive a letter confirming the Company's receipt of their opt-out form and that they should contact the STEPS Program Administrator within 14 days of mailing their opt-out form if they have not received the confirmation letter. Any copies of confirmation letters sent by the Company to an employee who exercised his or her right to opt-out of Step 3 (Arbitration) are retained in the Company's records in the regular course of the Company's business.

### *Electronic Signature Acknowledging Receipt of the*
### *STEPS Program Materials During Onboarding*

41.    Directly underneath the STEPS Program Materials in the Workday onboarding process is a "Signature Statement," which states, "By checking the box below, you acknowledge

you have received the Steps to Effective Problem Solving (STEPS) packet materials."  An employee is then provided with a box to click, next to "I Agree."  *See* Exhibit D.

42.     Moreover, the top of the Review Documents page states:

> On this screen as well as on several screens to follow, you will be asked to check or click certain boxes or buttons.  By checking or clicking those boxes or buttons, you agree to use an electronic signature to acknowledge your receipt of Burlington materials, to verify information, and to provide your consent or agreement to certain employment matters (such as, for example, your wage payment method).  Your electronic signature is as legally binding as an ink signature.

*See* Exhibit D.

43.     If a new employee fails to provide an electronic signature acknowledging receipt of any of the new hire documents by failing to click the box, "I Agree," the employee cannot proceed to the next step of onboarding and an "Error" pop-up message is displayed, informing the employee of the failure to provide an electronic signature.  For example, if an employee fails to provide an electronic signature acknowledging receipt of the STEPS Program Materials, an Error pop-up is displayed that states, "STEPS must be signed/acknowledged before submitting the task."  A true and correct copy of the "STEPS Error Pop-Up" is attached to this Declaration as Exhibit F.

44.     The new employee is the only one who can provide an electronic signature acknowledging receipt of the STEPS Program Materials after signing into Workday onboarding with his or her unique username and password.

### *Lee Is Hired, Electronically Acknowledges Receipt of His STEPS Program Materials, and Does Not Opt-Out*

45.     In August 2015, Burlington hired Lee as a receiving supervisor at its Chesterfield, Missouri store (Store # 964).

46.     According to Burlington's business records, which are kept in the ordinary course of the Company's business, on August 7, 2015, Lee completed his new hire onboarding in Workday and electronically signed the acknowledgement that he had received the STEPS Program Materials.  A true and correct copy of "Lee's Acknowledgments" is attached to this Declaration as Exhibit G.  Therefore, in accordance with the Program Rules & Procedures, Lee had 30 days from August 7, 2015, the day he received the STEPS Program Materials, to opt-out of arbitration.

47.     As set forth above, since the roll-out of the STEPS program in July 2014, the Company maintains a record of all employees who have opted-out of Step 3 (Arbitration) of the STEPS program.  I have never seen, nor am I aware of, an opt-out form submitted by Lee, and a comprehensive and exhaustive review of the Company's records reveals and confirms that the Company did not receive an opt-out form from Lee.

48.     As set forth above, if Burlington received an opt-out form from an employee, then Burlington thereafter sent a letter to the employee confirming its receipt of the employee's opt-out form and informing the employee that he or she was not covered by Step 3 (Arbitration) of the STEPS program.  Any copies of confirmation letters sent by the Company to an employee who exercised his or her right to opt-out of Step 3 (Arbitration) are retained in the Company's records in the regular course of the Company's business.  I have reviewed these records and have never seen, nor am I aware of, a confirmation letter that was sent to Lee in this regard, and a comprehensive and exhaustive review of the Company's records reveals and confirms that no such letter was ever sent to Lee.  The absence of a confirmation letter to Lee also shows that Lee did not opt-out of Step 3 (Arbitration).  Based on my comprehensive and thorough review of Burlington's records and based on my experience of finding the record-keeping practices of

13

Burlington to be accurate and trustworthy, the records confirm that Burlington did not receive an opt-out form from Lee.

    49.    Plaintiff's employment ended on November 5, 2015.

    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing information is true and correct.

                                                  YAZMIN HAMILTON

# EXHIBIT A

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

## FORM 10-K

☒   **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the fiscal year ended January 30, 2016
OR

☐   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the transition period from _____ to _____
Commission File Number 001-36107

# BURLINGTON STORES, INC.
### (Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **80-0895227** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **2006 Route 130 North** | |
| **Burlington, New Jersey** | **08016** |
| (Address of Principal Executive Offices) | (Zip Code) |

**(609) 387-7800**
(Registrant's telephone number, including area code)
Securities registered pursuant to Section 12(b) of the Act:

| <u>Title of each class</u> | <u>Name of each exchange on which registered</u> |
|---|---|
| Common Stock, par value $0.0001 per share | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☒      No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐      No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒      No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   Yes ☒      No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-Accelerated filer | ☐   (Do not check if a smaller reporting company) | Smaller reporting company | ☐ |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act).   Yes ☐      No ☒

The aggregate market value of the common stock held by non-affiliates of the registrant on July 31, 2015, the last business day of the registrant's most recently completed second fiscal quarter, was $4,065,651,679. The aggregate market value was computed by reference to the closing price of the Common Stock on such date.

As of February 27, 2016, 72,072,840 shares of common stock of the registrant were outstanding.

**Documents Incorporated By Reference:**

Certain provisions of the registrant's definitive proxy statement in connection with its 2016 Annual Meeting of Stockholders, to be filed within 120 days of the close of the registrant's 2015 fiscal year, are incorporated by reference in Part III hereof.

**BURLINGTON STORES, INC.**
**INDEX TO REPORT ON FORM 10-K**

**FOR THE FISCAL YEAR ENDED JANUARY 30, 2016**

| | | PAGE |
|---|---|---|
| **PART I.** | | |
| Item 1. | Business | 1 |
| Item 1A. | Risk Factors | 5 |
| Item 1B. | Unresolved Staff Comments | 16 |
| Item 2. | Properties | 16 |
| Item 3. | Legal Proceedings | 17 |
| Item 4. | Mine Safety Disclosures | 17 |
| **PART II.** | | |
| Item 5. | Market for Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 18 |
| Item 6. | Selected Financial Data | 20 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 22 |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk | 41 |
| Item 8. | Financial Statements and Supplementary Data | 43 |
| Item 9. | Changes in and Disagreements With Accountants on Accounting and Financial Disclosure | 86 |
| Item 9A. | Controls and Procedures | 86 |
| Item 9B. | Other Information | 88 |
| **PART III.** | | |
| Item 10. | Directors, Executive Officers and Corporate Governance | 88 |
| Item 11. | Executive Compensation | 88 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 88 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 88 |
| Item 14. | Principal Accounting Fees and Services | 88 |
| **PART IV.** | | |
| Item 15. | Exhibits, Financial Statement Schedules | 89 |
| **SIGNATURES** | | 95 |
| **EXHIBIT INDEX** | | 96 |

# PART I

## Item 1.      Business

### Overview

We are a nationally recognized retailer of high-quality, branded apparel at everyday low prices. We opened our first store in Burlington, New Jersey in 1972, selling primarily coats and outerwear. Since then, we have expanded our store base to 567 stores as of January 30, 2016, inclusive of an internet store, in 45 states and Puerto Rico, and diversified our product categories by offering an extensive selection of in-season, fashion-focused merchandise, including: women's ready-to-wear apparel, menswear, youth apparel, baby, footwear, accessories, home and coats. We sell a broad selection of desirable, first-quality, current-brand, labeled merchandise acquired directly from nationally recognized manufacturers and other suppliers. For the fiscal year ended January 30, 2016, we generated total revenue of $5,129.8 million and net sales of $5,098.9 million, and earned net income, Adjusted Net Income and Adjusted EBITDA (as subsequently defined in this Form 10-K) of $150.5 million, $174.6 million and $484.0 million, respectively.

As used in this Annual Report, the terms "Company," "we," "us," or "our" refer to Burlington Stores, Inc. and all its subsidiaries. We were organized in 2013 under the name Burlington Holdings, Inc. and currently exist as a Delaware corporation. Our indirect subsidiary, Burlington Coat Factory Warehouse Corporation (BCFWC), was initially organized in 1972 as a New Jersey corporation, was reincorporated in 1983 in Delaware when the company originally became a public company and currently exists as a Delaware corporation. BCFWC became a direct, wholly-owned subsidiary of Burlington Coat Factory Investments Holdings, Inc. in connection with the acquisition of BCFWC in April 2006 by affiliates of Bain Capital Partners, LLC (along with its associated investment funds, or any successor to its investment management business, Bain Capital) in a take private transaction (the Merger Transaction) and became an indirect, wholly-owned subsidiary of ours on February 14, 2013 in connection with our corporate reorganization. We completed an initial public offering of our common stock in October 2013.

### Fiscal Year End

We define our fiscal year as the 52 or 53 week period ending on the Saturday closest to January 31. This is an annual report for the 52 week fiscal year ended January 30, 2016 (Fiscal 2015). The fiscal years ended January 31, 2015 (Fiscal 2014) and February 1, 2014 (Fiscal 2013) also consisted of 52 weeks.

### Our Stores

As of January 30, 2016, we operated 567 stores, inclusive of an internet store. Over 98% of our net sales are derived from stores we operate as Burlington stores (Burlington Stores). We believe that our customers are attracted to our stores principally by the availability of a large assortment of first-quality current brand-name merchandise at everyday low prices.

Burlington Stores offer customers a complete line of value-priced apparel, including: ladies sportswear, menswear, coats, family footwear and youth apparel as well as baby furniture, accessories, home décor and gifts. We continue to emphasize our rich heritage of coats and outerwear and we believe that we are viewed as the destination for coat shoppers. Our broad selection provides a wide range of apparel, accessories and furnishing for all ages. We purchase both pre-season and in-season merchandise, allowing us to respond timely to changing market conditions and consumer fashion preferences. Furthermore, we believe Burlington Stores' substantial selection of staple, destination products attracts customers from beyond our local trade areas. We believe these products drive incremental store-traffic and differentiate us from our competitors.

In some of our stores, we grant unaffiliated third parties the right to use designated store space solely for the purpose of selling such third parties' goods, primarily fragrances. During Fiscal 2015, our rental income from all such arrangements aggregated less than 1% of our total revenues. We do not own or have any rights to any trademarks, licenses or other intellectual property used in connection with the brands sold by such unaffiliated third parties. During Fiscal 2015, we began the conversion our fragrance business, which was previously operated under a licensing arrangement, to an owned category, and such sales are recorded in the line item "Net sales" in our Consolidated Statements of Operations.  By the end of the first quarter of Fiscal 2016, we expect fragrances will be exclusively an owned business.

We believe the breadth of our selection and our ability to successfully operate in stores of varying square footage represent a competitive advantage. Our average store size is approximately 77,000 square feet. We believe that as we continue to reduce our comparable store inventory, we will be able to reduce the square footage of our stores while continuing to maintain our broad assortment. As a result, we believe major landlords seek us as a tenant because the appeal of our apparel merchandise profile attracts a desired customer base.

1

Our store base is geographically diversified wi th stores located in 45 states and Puerto Rico.

| State | Number of Stores | State | Number of Stores | State | Number of Stores |
|---|---|---|---|---|---|
| AK | 2 | LA | 9 | NY | 36 |
| AL | 7 | MA | 14 | OH | 21 |
| AR | 5 | MD | 16 | OK | 3 |
| AZ | 9 | ME | 2 | OR | 4 |
| CA | 63 | MI | 17 | PA | 31 |
| CO | 6 | MN | 7 | PR | 12 |
| CT | 10 | MO | 7 | RI | 4 |
| DE | 2 | MS | 2 | SC | 5 |
| FL | 39 | NC | 13 | SD | 1 |
| GA | 15 | ND | 1 | TN | 7 |
| IA | 2 | NE | 1 | TX | 57 |
| ID | 2 | NH | 3 | UT | 3 |
| IL | 31 | NJ | 31 | VA | 17 |
| IN | 12 | NM | 2 | WA | 11 |
| KS | 6 | NV | 5 | WI | 9 |
| KY | 5 | | | | |

Our store sales area is organized by merchandise category with flexibility to quickly expand or contract category offerings in response to changes in consumer preferences. Our typical store features open sight lines, bright overhead lighting and clear signage to promote easy navigation through the store. We highlight the best brands and freshest product in four way fixtures along the aisles with additional merchandise arranged by size in H-racks. We believe our clean, organized merchandise presentation highlights the brands, value, selection and sizing within assortments and promotes a self-service, treasure hunt experience for our customers.

Our store managers are accountable for the sales and profitability of their stores. The store leadership team is comprised of managers and assistant managers. The stores are led by their regional team, consisting of a regional vice president and regional managers in operations, human resources and loss prevention. The regional vice president sets the priorities for the team and ensures the stores are supported in their overall mission to grow sales and profitability.

**Store Expansion and Real Estate Strategy**

We continue to explore expansion opportunities both within our current market areas and in other regions. We believe that our ability to find satisfactory locations for our stores is essential for the continued growth of our business. The opening of stores generally is contingent upon a number of factors including, but not limited to, the availability of desirable locations with suitable structures and the negotiation of acceptable lease terms. There can be no assurance, however, that we will be able to find suitable locations for new stores or that even if such locations are found and acceptable lease terms are obtained, we will be able to open the number of new stores presently planned.

We have a proven track record of new store expansion. Our store base has grown from 13 stores in 1980 to 567 stores, inclusive of an internet store, as of January 30, 2016. Assuming that appropriate locations are identified, we believe that we will be able to execute our growth strategy without significantly impacting our current stores. We have identified numerous market opportunities that we believe will allow us to reach 1,000 stores over the long-term.  The table below shows our store openings and closings since the beginning of Fiscal 2013.

| | As of February 1, 2014 | As of January 31, 2015 | As of January 30, 2016 |
|---|---|---|---|
| Stores (beginning of period) | 500 | 521 | 542 |
| Stores opened | 23 | 24 | 28 |
| Stores closed | (2) | (3) | (3) |
| Stores (end of period) | 521 | 542 | 567 |

2

**Distribution and Warehousing**

We have four distribution centers that ship approximately 93% of merchandise units to our stores. The remaining 7% of merchandise units are drop shipped from our vendors directly to our stores. Our two east coast distribution centers are located in Edgewater Park, New Jersey and Burlington, New Jersey. Our two west coast distribution centers are located in San Bernardino, California, and Redlands, California. These four distribution centers occupy an aggregate of 2,786,000 square feet and each includes processing, shipping and storage capabilities.

In addition, we operate three warehousing facilities to support our distribution centers. The east coast has two supporting warehouses in Burlington, New Jersey and in Florence, New Jersey. The west coast has one supporting warehouse in Redlands, California. These three warehousing facilities occupy an aggregate of 1,056,000 square feet and primarily serve as storage facilities.

|  | Calendar Year Operational | Size (sq. feet) | Leased or Owned |
|---|---|---|---|
| **Primary Distribution Centers:** | | | |
| Edgewater Park, New Jersey | 2004 | 648,000 | Owned |
| Burlington, New Jersey (Daniels Way) | 2014 | 678,000 | Leased |
| San Bernardino, California | 2006 | 660,000 | Leased |
| Redlands, California (Pioneer Ave) | 2014 | 800,000 | Leased |
| **Warehousing Facilities:** | | | |
| Burlington, New Jersey (Route 130 North) | 1987 | 402,000 | Owned |
| Florence, New Jersey | 2013 | 208,000 | Leased |
| Redlands, California (Palmetto Ave) | 2015 | 446,000 | Leased |

**Customer Service**

We are committed to providing our customers with an enjoyable shopping experience and strive to make continuous efforts to improve customer service. In training our employees, our goal is to emphasize knowledgeable, friendly customer service and a sense of professional pride. We offer our customers special services to enhance the convenience of their shopping experience, such as professional tailors, a baby gift registry and layaways.

We have empowered our store teams to provide an outstanding customer experience for every customer in every store, every day. We have streamlined processes and will continue to strive to create opportunities for fast and effective customer interactions. Our stores must reflect clean, organized merchandise presentations that highlight the brands, value, and diversity of selection within our assortments.

**Our Off-Price Sourcing and Merchandising Model**

Our "open to buy" off-price model enables us to provide our customers with products that are nationally branded, fashionable, high quality and priced right. We have an experienced team of General Merchandise Managers, Divisional Merchandise Managers and buyers focused on improving comparable store inventory turnover, inventory age and freshness of merchandise. We purchase merchandise from many suppliers, none of which accounted for more than 2% of our net purchases during Fiscal 2015. We have no long-term purchase commitments or arrangements with any of our suppliers, and believe that we are not dependent on any one supplier. We continue to have good working relationships with our suppliers.

We have designed our merchant organization so that buyers focus primarily on buying, planners focus primarily on planning, and information systems help inform data-driven decisions for both groups. Buyers are in the market each week and focus on purchasing great products for great value. We seek to purchase a majority of our merchandise in-season. Buyers spend time interacting face-to-face with new and existing vendors and on continuously evaluating trends in the market to which we believe our customers would respond positively. Our buyers use a merchant scorecard that rates products across four key attributes—fashion, quality, brand and price—to help formalize a framework for buying decisions.

3

Ou r merchandising model allows us to provide our customers with a wide breadth of product categories. Sales percentage by major product category is as follows:

| Category | Fiscal 2015 | Fiscal 2014 | Fiscal 2013 |
|---|---|---|---|
| Women's Ready-to-Wear Apparel | 24% | 24% | 24% |
| Accessories and Footwear | 22% | 22% | 21% |
| Menswear | 21% | 20% | 19% |
| Youth Apparel/Baby | 16% | 18% | 20% |
| Home | 11% | 9% | 8% |
| Coats | 6% | 7% | 8% |

## E-Commerce

We employ an e-commerce strategy currently focused on increasing awareness of the breadth of our merchandise selection, great brands and values, as well as driving traffic to our stores and selling merchandise directly from our website. We execute our strategy through our website and through social media platforms such as Facebook, Twitter and Pinterest. In Fall 2013, we re-launched our website with a significantly upgraded user experience – including improved navigation, shopping functionality and a more modern layout to increase site traffic and conversion rates. This re-launch also included an expansion of the online merchandise assortment to include additional items across women's ready-to-wear apparel, menswear, youth apparel, baby, accessories, home and coats. As a part of this re-launch, we also updated the cross-channel Baby Registry currently serving our Baby Depot customers.

## Customer Demographic

Our core customer is the 25-49 year-old woman. The core customer is educated, resides in mid- to large-sized metropolitan areas and is a brand conscious fashion enthusiast. This customer shops for herself, her family, and her home. We appeal to value seeking and fashion conscious customers who are price-driven but enjoy the style and fit of high-quality, branded merchandise.

## Marketing and Advertising

We use a variety of broad-based and targeted marketing strategies to efficiently deliver the right message to the targeted audience at the right time. These strategies include national television, direct mail, email, digital marketing, local radio and out-of-home communications. Our broad television broadcast communication and reach is balanced with relevant customer contacts to increase frequency of store visits.

## Management Information Systems and Processes

We utilize a combination of primarily industry-standard third party and internally developed information technology and system solutions across our business functions. We continually evaluate and implement business system technology and solutions that enhance the consistency of our execution and improve the scalability of business system functions across a growing store base. We utilize a testing methodology which allows us to evaluate new initiatives across our entire organization and make data-driven decisions that support growth and minimize costs. To date, we have performed tests in store operations, merchandise presentation, advertising and marketing, among other areas.

## Competition

The U.S. retail apparel and home furnishings markets are highly fragmented and competitive. We compete for business with department stores, off-price retailers, specialty stores, discount stores, wholesale clubs, and outlet stores. At various times throughout the year, traditional full-price department store chains and specialty shops offer brand-name merchandise at substantial markdowns, which can result in prices approximating those offered by us at our Burlington Stores.

## Seasonality

Our business, like that of most retailers, is subject to seasonal influences, with the major portion of sales and income typically realized during the back-to-school and holiday seasons (September through January). Weather is also a contributing factor to the sale of our clothing. Generally, our sales are higher if the weather is cold during the Fall and warm during the early Spring.

**Trademarks**

We own the trademarks, service marks and tradenames that we use in connection with the operation of our business. Our trademarks include "Burlington Stores," "BCF," "Burlington," "Burlington Coat Factory," "Cohoes," "Luxury Linens," "MJM Designer Shoes," and "Baby Depot." We consider these trademarks and the accompanying name recognition to be valuable to our business. We believe that our rights to these properties are adequately protected. Our rights in these trademarks endure for as long as they are used.

**Employees**

As of January 30, 2016, we employed approximately 37,500 people, including part-time and seasonal employees. Our staffing requirements fluctuate during the year as a result of the seasonality of our business. We hire additional employees and increase the hours of part-time employees during seasonal peak selling periods. As of January 30, 2016, employees at two of our stores were subject to collective bargaining agreements.

**AVAILABLE INFORMATION**

We are subject to the reporting requirements of the Securities Exchange Act of 1934, as amended (the Exchange Act). Therefore, we file reports, proxy statements and other information with the Securities and Exchange Commission (SEC). Copies of such reports, proxy statements, and other information may be obtained by visiting the Public Reference Room of the SEC at 100 F Street, NE, Washington, DC 20549 or by calling the SEC at 1-800-SEC-0330. In addition, the SEC maintains a website ( http://www.sec.gov ) that contains reports, proxy and information statements and other information regarding issuers that file electronically with the SEC.

You can access financial and other information about us in the Investors Relations section of our website, which can be accessed at www.burlingtonstores.com . We make available through our website, free of charge, copies of our annual report on Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K and amendments to those reports filed with or furnished to the SEC under Section 13(a) or 15(d) of the Exchange Act as soon as reasonably practicable after electronically filing or furnishing such material to the SEC. The information contained on, or accessible through, our website is not part of this Annual Report on Form 10-K and is therefore not incorporate by reference. The reference to our website address is intended to be an inactive textual reference only.

**Item 1A.      Risk Factors**

**CAUTIONARY STATEMENT REGARDING FORWARD-LOOKING STATEMENTS**

This report contains forward-looking statements that are based on current expectations, estimates, forecasts and projections about us, the industry in which we operate and other matters, as well as management's beliefs and assumptions and other statements regarding matters that are not historical facts. For example, when we use words such as "projects," "expects," "anticipates," "intends," "plans," "believes," "seeks," "estimates," "should," "would," "could," "will," "opportunity," "potential" or "may," variations of such words or other words that convey uncertainty of future events or outcomes, we are making forward looking statements within the meaning of Section 27A of the Securities Act of 1933 (Securities Act) and Section 21E of the Exchange Act. Our forward-looking statements are subject to risks and uncertainties. Such statements may include but are not limited to, proposed store openings and closings, proposed capital expenditures, projected financing requirements, proposed developmental projects, projected sales and earnings, our ability to maintain selling margins, and the effect of the adoption of recent accounting pronouncements on our consolidated financial position, results of operations and cash flows. Actual events or results may differ materially from the results anticipated in these forward-looking statements as a result of a variety of factors. While it is impossible to identify all such factors, factors that could cause actual results to differ materially from those estimated by us include: general economic conditions; competitive factors, including pricing and promotional activities of major competitors; our ability to successfully implement one or more of our strategic initiatives; the availability of desirable store locations on suitable terms; changing consumer preferences and demand; industry trends, including changes in buying, inventory and other business practices by customers; competitive factors, including pricing and promotional activities of major competitors; the availability, selection and purchasing of attractive merchandise on favorable terms; import risks; weather patterns, including, among other things, changes in year-over-year temperatures; our future profitability; our ability to control costs and expenses; unforeseen computer related problems; any unforeseen material loss or casualty; the effect of inflation; an increase in competition within the markets in which we compete; regulatory changes; changes in general and/or regional economic conditions; our relationships with employees; the impact of current and future laws; terrorist attacks, particularly attacks on or within markets in which we operate; natural and man-made disasters, including but not limited to fire, snow and ice storms, flood, hail, hurricanes and earthquakes; our substantial level of indebtedness and related debt-service obligations; restrictions imposed by covenants in our debt agreements; availability of adequate financing; our dependence on vendors for our

5

merchandise; domestic events affecting the delivery of merchandise to our stores; existence of adverse litigation and risks; and each of the factors discussed in this Item 1A, Risk Factors as well as risks discussed elsewhere in this report. Whi le we believe that our assumptions are reasonable, we caution that it is very difficult to predict the impact of known factors, and it is impossible for us to anticipate all factors that could affect our actual results. In addition, as a result of these an d other factors, our past financial performance should not be relied on as an indication of future performance. The cautionary statements referred to in this section also should be considered in connection with any subsequent written or oral forward-lookin g statements that may be issued by us or persons acting on our behalf. We undertake no obligation to publicly update or revise any forward-looking statements, whether as a result of new information, future events or otherwise, except as required by law. In light of these risks and uncertainties, the forward-looking events and circumstances discussed in this report might not occur. Furthermore, we cannot guarantee future results, events, levels of activity, performance or achievements.

Set forth below are certain important risks and uncertainties that could adversely affect our results of operations or financial condition and cause our actual results to differ materially from those expressed in forward-looking statements made by us. Although we believe that we have identified and discussed below the key risk factors affecting our business, there may be additional risks and uncertainties that are not presently known or that are not currently believed to be significant that may adversely affect our performance or financial condition. More detailed information regarding certain risk factors described below is contained in other sections of this report.

## Risks Related to Our Business and Our Substantial Indebtedness

### *General economic conditions and consumer spending affect our business.*

Consumer spending habits, including spending for the merchandise that we sell, are affected by, among other things, prevailing global economic conditions, inflation, levels of employment, salaries and wage rates, prevailing interest rates, housing costs, energy costs, commodities pricing, income tax rates and policies, consumer confidence and consumer perception of economic conditions. In addition, consumer purchasing patterns may be influenced by consumers' disposable income, credit availability and debt levels. An incremental slowdown in the U.S. economy, an uncertain global economic outlook or an expanded credit crisis could adversely affect consumer spending habits resulting in lower net sales and profits than expected on a quarterly or annual basis. Consumer confidence is also affected by the domestic and international political situation. Our financial condition and operations could be impacted by changes in government regulations in areas including, but not limited to, taxes and healthcare. The outbreak or escalation of war, or the occurrence of terrorist acts or other hostilities in or affecting the U.S. could lead to a decrease in spending by consumers. In addition, natural disasters, industrial accidents and acts of war in various parts of the world could have the effect of disrupting supplies and raising prices globally which, in turn, may have adverse effects on the world and U.S. economies and lead to a downturn in consumer confidence and spending.

### *We face increased competition from other retailers that could adversely affect our business.*

The retail sector is highly competitive, and retailers are constantly adjusting their business model, promotional activity and pricing strategies in response to changing conditions. We compete on the basis of a combination of factors, including among others, price, breadth, quality and style of merchandise offered, in-store experience, level of customer service, ability to identify and respond to new and emerging fashion trends, brand image and scalability. We compete with a wide variety of large and small retailers for customers, vendors, suitable store locations and personnel. In order to increase traffic and drive consumer spending in the economic environment of the past several years, competitors, including department stores, mass merchants and specialty apparel stores, have been offering brand-name merchandise at substantial markdowns. Continuation of this trend, or the possible effect on consumer buying patterns that improving economic conditions could have, may cause consumer demand to shift from off-price retailers to other retail categories, which could have a material adverse effect on our business, financial condition and results of operations.

Certain traditional, full-price retail chains have developed off-price concepts, which may directly compete with our business. Our competitors, including such retail chains, may seek to emulate facets of our business strategy, which could result in a reduction of any competitive advantage or special appeal that we might possess. In addition, most of our products are sold to us on a non-exclusive basis. As a result, our current and future competitors may be able to duplicate or improve on some or all of our product offerings that we believe are important in differentiating our stores. If our competitors were to duplicate or improve on some or all of our in-store experience or product offerings, obtaining the products we sell may become increasingly difficult, competition for customers may increase, and our competitive position and our business could suffer.

Our ability to compete with other retailers and to meet our customer expectations may also suffer if we are unable to maintain an effective online presence or successfully execute our e-commerce platform.  Our e-commerce operating margins are impacted by a variety of factors including, but not limited to, costs to pick and ship merchandise to our customers and investments to provide the infrastructure necessary to expand our e-commerce strategy.

6

**SIGNATURES**

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized.

**BURLINGTON STORES, INC.**

By:        /s/ Thomas A. Kingsbury
                Thomas A. Kingsbury
                **Chairman, President and**
                **Chief Executive Officer**

Date: March 15, 2016

Pursuant to the requirements of the Securities Exchange Act of 1934, this Report has been signed below by the following persons on behalf of the registrant and in the capacities indicated on the 15 th day of March 2016.

| Signature | Title |
|---|---|
| /s/ Thomas A. Kingsbury<br>**Thomas A. Kingsbury** | Chairman, President and Chief Executive Officer<br>(Principal Executive Officer) |
| /s/ Marc Katz<br>**Marc Katz** | Executive Vice President and Chief Financial Officer<br>(Principal Financial Officer) |
| /s/ John Crimmins<br>**John Crimmins** | Senior Vice President and Chief Accounting Officer<br>(Principal Accounting Officer) |
| /s/ Joshua Bekenstein<br>**Joshua Bekenstein** | Director |
| /s/ Frank Cooper, III<br>**Frank Cooper, III** | Director |
| /s/ Jordan Hitch<br>**Jordan Hitch** | Director |
| /s/ John Mahoney<br>**John Mahoney** | Director |
| /s/ William McNamara<br>**William McNamara** | Director |
| /s/ Tricia Patrick<br>**Tricia Patrick** | Director |
| /s/ Paul Sullivan<br>**Paul Sullivan** | Director |
| /s/ Mary Ann Tocio<br>**Mary Ann Tocio** | Director |

**EXHIBIT INDEX**

| Exhibit | Description |
|---|---|
| 10.45 | Form of Non-Qualified Stock Option Agreement between Burlington Stores, Inc. and Employees with Employment Agreements pursuant to 2006 Management Incentive Plan (for grants made after from and after December 2015). |
| 10.46 | Form of Non-Qualified Stock Option Agreement between Burlington Stores, Inc. and Employees without Employment Agreements pursuant to 2006 Management Incentive Plan (for grants made after from and after December 2015). |
| 10.47 | Form of Restricted Stock Grant Agreement between Burlington Stores, Inc. and Employees with Employment Agreements pursuant to 2006 Management Incentive Plan (for grants made after from and after December 2015). |
| 10.48 | Form of Restricted Stock Grant Agreement between Burlington Stores, Inc. and Employees without Employment Agreements pursuant to 2006 Management Incentive Plan (for grants made after from and after December 2015). |
| 10.49 | Form of Non-Qualified Stock Option Agreement between Burlington Stores, Inc. and Employees with Employment Agreements pursuant to 2013 Omnibus Incentive Plan. |
| 10.50 | Form of Non-Qualified Stock Option Agreement between Burlington Stores, Inc. and Employees without Employment Agreements pursuant to 2013 Omnibus Incentive Plan. |
| 10.51 | Form of Restricted Stock Grant Agreement between Burlington Stores, Inc. and Employees with Employment Agreements pursuant to 2013 Omnibus Incentive Plan. |
| 10.52 | Form of Restricted Stock Grant Agreement between Burlington Stores, Inc. and Employees without Employment Agreements pursuant to 2013 Omnibus Incentive Plan. |
| 21.1 | List of Subsidiaries of Burlington Stores, Inc. |
| 23.1 | Consent of Deloitte & Touche LLP. |
| 31.1 | Certification of Principal Executive Officer required by Rule 13a-14(a) or Rule 15d-14(a) of the Securities Exchange Act of 1934, as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| 31.2 | Certification of Principal Financial Officer required by Rule 13a-14(a) or Rule 15d-14(a) of the Securities Exchange Act of 1934, as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| 32.1 | Certification of Principal Executive Officer pursuant to 18 U.S.C. 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |
| 32.2 | Certification of Principal Financial Officer pursuant to 18 U.S.C. 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |
| 101.INS | XBRL Instance Document |
| 101.SCH | XBRL Taxonomy Extension Schema Document |
| 101.CAL | XBRL Taxonomy Extension Calculation Linkbase Document |
| 101.DEF | XBRL Taxonomy Extension Definition Linkbase Document |
| 101.LAB | XBRL Taxonomy Extension Label Linkbase Document |
| 101.PRE | XBRL Taxonomy Extension Presentation Linkbase Document |

**Exhibit 21.1**

**Subsidiaries of Burlington Stores, Inc.**

| Exact Name of Subsidiaries of Registrant as Specified in their Charter | State or Other Jurisdiction of Incorporation or Organization |
|---|---|
| Burlington Holdings, LLC | Delaware |
| Burlington Holdings Finance, Inc. | Delaware |
| Burlington Coat Factory Holdings, LLC | Delaware |
| Burlington Coat Factory Investments Holdings, Inc. | Delaware |
| Burlington Coat Factory Warehouse Corporation | Delaware |
| Burlington Merchandising Corporation | Delaware |
| Burlington Coat Factory of Alabama, LLC | Alabama |
| Burlington Coat Factory Realty of Huntsville LLC | Alabama |
| Burlington Coat Factory Warehouse of Anchorage, Inc. | Alaska |
| Burlington Coat Factory of Arizona, LLC | Arizona |
| Burlington Coat Factory Realty of Desert Sky, Inc. | Arizona |
| Burlington Coat Factory Realty of Mesa, Inc. | Arizona |
| Burlington Coat Factory of Arkansas, LLC | Arkansas |
| Baby Depot of California, LLC | California |
| Burlington Coat Factory of California, LLC | California |
| Burlington Coat Factory Realty of Dublin, Inc. | California |
| Burlington Coat Factory Realty of Florin, Inc. | California |
| Burlington Coat Factory Realty of Ventura, Inc. | California |
| Burlington Coat Factory of San Bernardino, LLC | California |
| MJM Designer Shoes of California, LLC | California |
| Burlington Coat Factory of Colorado, LLC | Colorado |
| Burlington Coat Factory of Connecticut, LLC | Connecticut |
| Burlington Coat Realty of East Windsor, Inc. | Connecticut |
| Cohoes Fashions of Connecticut, LLC | Connecticut |
| Burlington Coat Factory of Delaware, LLC | Delaware |
| Burlington Coat Factory of Texas, Inc. | Delaware |
| Burlington Coat Factory of Texas, L.P. | Delaware |
| Burlington Coat Factory Realty Corp. | Delaware |
| Burlington Shell 1, Inc. | Delaware |
| C.F.I.C. Corporation | Delaware |
| MJM Designer Shoes of Delaware, LLC | Delaware |
| Scottchris, LLC | Delaware |
| Bee Ridge Plaza, LLC | Florida |
| Burlington Coat Factory of Florida, LLC | Florida |
| Burlington Coat Factory Realty of Coral Springs, Inc. | Florida |
| Burlington Coat Factory Realty of Orlando, Inc. | Florida |
| Burlington Coat Factory Realty of Sarasota, Inc. | Florida |
| Burlington Coat Factory Realty of University Square, Inc. | Florida |
| Burlington Coat Factory Realty of West Colonial, Inc. | Florida |
| K&T Acquisition Corp. | Florida |
| MJM Designer Shoes of Florida, LLC | Florida |
| Burlington Coat Factory of Georgia, LLC | Georgia |
| Burlington Coat Factory Realty of Morrow, Inc. | Georgia |
| Burlington Coat Factory Warehouse of Atlanta, Inc. | Georgia |
| Burlington Coat Factory of Hawaii, LLC | Hawaii |
| Burlington Coat Factory of Idaho, LLC | Idaho |
| Burlington Coat Factory of Illinois, LLC | Illinois |
| Burlington Coat Factory Realty of Bloomingdale, Inc. | Illinois |
| Burlington Coat Factory Realty of River Oaks, Inc. | Illinois |
| Burlington Coat Factory Warehouse of East St. Louis, Inc. | Illinois |
| Burlington Coat Realty of Gurnee, Inc. | Illinois |

| | |
|---|---|
| Burlington Coat Factory of Indiana, LLC | Indiana |
| Burlington Coat Factory Realty of Greenwood, Inc. | Indiana |
| Burlington Coat Factory of Iowa, LLC | Iowa |
| Burlington Coat Factory of Kansas, LLC | Kansas |
| Burlington Coat Factory of Kentucky, Inc. | Kentucky |
| Burlington Coat Factory of Louisiana, LLC | Louisiana |
| Burlington Coat Factory of Maine, LLC | Maine |
| Burlington Coat Factory of Maryland, LLC | Maryland |
| Burlington Coat Factory of Massachusetts, LLC | Massachusetts |
| Burlington Coat Factory Realty of North Attleboro, Inc. | Massachusetts |
| Cohoes Fashions of Massachusetts, LLC | Massachusetts |
| Burlington Coat Factory of Michigan, LLC | Michigan |
| Burlington Coat Factory Warehouse of Detroit, Inc. | Michigan |
| Burlington Coat Factory Warehouse of Grand Rapids, Inc. | Michigan |
| Burlington Coat Factory Warehouse of Redford, Inc. | Michigan |
| Burlington Coat Factory of Minnesota, LLC | Minnesota |
| Burlington Coat Factory of Mississippi, LLC | Mississippi |
| Burlington Coat Factory of Missouri, LLC | Missouri |
| Burlington Coat Factory Realty of Des Peres, Inc. | Missouri |
| Burlington Coat Factory of Montana, LLC | Montana |
| Burlington Coat Factory of Nebraska, LLC | Nebraska |
| Burlington Coat Factory of Nevada, LLC | Nevada |
| Burlington Coat Realty of Las Vegas, Inc. | Nevada |
| Burlington Coat Factory of New Hampshire, LLC | New Hampshire |
| Burlington Coat Factory Direct Corporation | New Jersey |
| Burlington Coat Factory of New Jersey, LLC | New Jersey |
| Burlington Coat Factory Realty of Edgewater Park, Inc. | New Jersey |
| Burlington Coat Factory Realty of Paramus, Inc. | New Jersey |
| Burlington Coat Factory Realty of Pinebrook, Inc. | New Jersey |
| Burlington Coat Factory Warehouse of Edgewater Park, Inc. | New Jersey |
| Burlington Coat Factory Warehouse of Edgewater Park Urban Renewal Corp. | New Jersey |
| Burlington Coat Factory Warehouse of New Jersey, Inc. | New Jersey |
| Cohoes Fashions of New Jersey, LLC | New Jersey |
| MJM Designer Shoes of Moorestown, Inc. | New Jersey |
| MJM Designer Shoes of New Jersey, LLC | New Jersey |
| Super Baby Depot of Moorestown, Inc. | New Jersey |
| BCF Florence Urban Renewal, LLC | New Jersey |
| Burlington Coat Factory of New Mexico, LLC | New Mexico |
| Burlington Coat Factory of New York, LLC | New York |
| Burlington Coat Factory Realty of Yonkers, Inc. | New York |
| Cohoes Fashions of New York, LLC | New York |
| Georgetown Fashions Inc. | New York |
| LC Acquisition Corp. | New York |
| MJM Designer Shoes of New York, LLC | New York |
| Monroe G. Milstein, Inc. | New York |
| Burlington Coat Factory of North Carolina, LLC | North Carolina |
| Burlington Coat Factory of North Dakota, LLC | North Dakota |
| Burlington Coat Factory of Ohio, LLC | Ohio |
| Burlington Coat Factory Warehouse of Cleveland, Inc. | Ohio |
| Burlington Coat Factory of Oklahoma, LLC | Oklahoma |
| Burlington Coat Factory Realty of Tulsa, Inc. | Oklahoma |
| Burlington Coat Factory of Oregon, LLC | Oregon |
| Burlington Coat Factory of Pennsylvania, LLC | Pennsylvania |
| Burlington Coat Factory Realty of Langhorne, Inc. | Pennsylvania |
| Burlington Coat Factory Realty of West Mifflin, Inc. | Pennsylvania |
| Burlington Coat Factory Realty of Whitehall, Inc. | Pennsylvania |
| Burlington Coat Factory Warehouse Inc. | Pennsylvania |
| Burlington Coat Factory Warehouse of Bristol, LLC | Pennsylvania |

| | |
|---|---|
| Burlington Coat Factory Warehouse of Cheltenham, Inc. | Pennsylvania |
| Burlington Coat Factory Warehouse of Langhorne, Inc. | Pennsylvania |
| Burlington Coat Factory Warehouse of Montgomeryville, Inc. | Pennsylvania |
| Burlington Factory Warehouse of Reading, Inc. | Pennsylvania |
| MJM Designer Shoes of Pennsylvania, LLC | Pennsylvania |
| Burlington Coat Factory of Puerto Rico, LLC | Puerto Rico |
| Burlington Coat Factory of Rhode Island, LLC | Rhode Island |
| Cohoes Fashions of Cranston, Inc. | Rhode Island |
| Burlington Coat Factory of South Carolina, LLC | South Carolina |
| Burlington Coat Factory Warehouse of Charleston, Inc. | South Carolina |
| Burlington Coat Factory of South Dakota, LLC | South Dakota |
| Burlington Coat Factory Realty of Memphis, Inc. | Tennessee |
| Burlington Coat Factory Warehouse of Hickory Commons, Inc. | Tennessee |
| Burlington Coat Factory Warehouse of Memphis, Inc. | Tennessee |
| Burlington Coat Factory Warehouse of Shelby, Inc. | Tennessee |
| Burlington Coat Factory Realty of Bellaire, Inc. | Texas |
| Burlington Coat Factory Realty of El Paso, Inc. | Texas |
| Burlington Coat Factory Realty of Westmoreland, Inc. | Texas |
| Burlington Coat Factory Warehouse of Baytown, Inc. | Texas |
| Burlington Coat Realty of Houston, Inc. | Texas |
| Burlington Coat Realty of Plano, Inc. | Texas |
| MJM Designer Shoes of Texas, Inc. | Texas |
| Burlington Coat Factory of Utah, LLC | Utah |
| Burlington Coat Factory of Vermont, LLC | Vermont |
| BCF Cards, Inc. | Virginia |
| Burlington Coat Factory of Virginia, LLC | Virginia |
| Burlington Coat Factory of Pocono Crossing, LLC | Virginia |
| Burlington Coat Factory Realty of Coliseum, Inc. | Virginia |
| Burlington Coat Factory Realty of Fairfax, Inc. | Virginia |
| Burlington Coat Factory Warehouse of Coliseum, Inc. | Virginia |
| Burlington Coat Realty of Potomac, Inc. | Virginia |
| Burlington Coat Factory of Washington, LLC | Washington |
| Burlington Coat Factory Realty of Franklin, Inc. | Washington |
| Burlington Coat Factory of West Virginia, LLC | West Virginia |
| Burlington Coat Factory of Wisconsin, LLC | Wisconsin |

# EXHIBIT B



# EXHIBIT C

1  Click on the links under *Our Company Experience* - to learn about our culture, our Core Values, and our community involvement.
2  The *Getting Started* section will help you prepare for your first day with videos of our associates talking about life at Burlington and a message from our President, CEO, and Chairman of the Board Tom Kingsbury
3  Your last step is the *On-boarding Checklist* which contains the forms, handbooks, and other documents you should review or complete before your first day.

Please ensure that you visit the *Our Company Experience* and *Getting Started* sections before selecting the *On-boarding Checklist*.

We are thrilled to have you be a part of our team! Have a great day and we'll see you soon.

Our Company Experience

 Core Values

 Fun at Burlington

 Associate Engagement

 Rewards & Recognition

 Giving Back

 Our Growth/Your Career

 Recent News

**S.T.E.P.S.**

Here at Burlington, we believe in building strong work relationships that contribute to a positive, productive, and friendly work environment, but we realize that concerns in the workplace do sometimes occur. You may encounter a problem or complaint that if left unresolved could effect job satisfaction and work performance

To assist in these cases, Burlington is pleased to provide you the unique benefit of STEPS (Steps to Effective Problem Solving) – our early dispute resolution program

The STEPS program provides multiple opportunities to resolve almost any type of workplace dispute, however large or small. It helps reinforce the importance of listening to each other and understanding different points of view. The key to STEPS is early resolution, helping to preserve our work relationships, uphold our company's Core Values, exercise transparency with open and honest two-way communication, and enjoy the kind of work environment that supports both individual and company success.

In the event you have or develop concerns related to your employment, the STEPS program is a resource to having them heard and resolved. Most concerns are resolved early in the program, in Step 1: Open Door, or Step 2: Request for Reconsideration. In the rare case that a concern involving a legal claim is still unresolved, Step 3: Arbitration is available. Legal claims are resolved by an arbitrator from the American Arbitration Association (AAA), the largest provider of early dispute resolution services in the United States, rather than by a judge or jury in a court. Unless you choose to opt-out of the arbitration program within the prescribed time period, you are covered by the arbitration program throughout your employment with Burlington, and after employment should you leave the company.

Later on in your electronic onboarding process you will receive more detailed information about the Burlington Stores, Inc.'s Early Dispute Resolution Program Rules and Procedures, which is a comprehensive description of the STEPS program. To learn more, an eCourse is available to you in our LMS (Learning Management System) or you can speak with your Human Resources Representative. Our door is always open.

Burlington has had more than 40 years of growth and success  and

 S.T.E.P.S      Here at Burlington, we believe in building strong work relationships

We have lots of great news to share about our associates, our company

# EXHIBIT D



**Review Documents** Review Documents for Onboarding for Legal Demo ⋯

5 second(s) ago - Effective 05/04/2016

Below are several important documents related to your employment with Burlington. Please review all of the documents carefully. If you wish, you can print the documents or save them to your personal computer for future reference. In addition, you also have the ability to sign into Workday and reference them at any time after you begin your employment. Should you have any questions about any of the documents, please do not hesitate to contact your manager or human resources representative.

On this screen as well as on several screens to follow, you will be asked to check or click certain boxes or buttons. By checking or clicking those boxes or buttons, you agree to use an electronic signature to acknowledge your receipt of Burlington materials, to verify information, and to provide your consent or agreement to certain employment matters (such as, for example, your wage payment method). Your electronic signature is as legally binding as an ink signature.

## Documents

| | |
|---|---|
| **Document** | Code of Conduct Dec. 2015 |
| **Instructions** | At Burlington, we expect all associates to hold themselves and their fellow associates to the highest standards of business conduct and ethics. To ensure you are aware of our policies, please review our Code of Business Conduct and Ethics and check the acknowledgement box at the bottom |
| **Signature Statement** | By checking the box below, you acknowledge that you have received a copy of the Code of Business Conduct and Ethics, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| **I Agree** | ☐ |

| | |
|---|---|
| **Document** | Attendance Policy - Stores 102015 |
| **Instructions** | Working in a store is can be a lot of fun and very satisfying. However, when a fellow team member fails to come in to work it places a significant burden on the rest of the team. We have developed an Attendance Policy to help ensure all associates understand the importance of coming to work when expected. Please review this document and check the acknowledgement box at the bottom when you are finished. |
| **Signature Statement** | By checking the box below, you acknowledge that you have received a copy of the Attendance Policy, that you have read and fully understand these policies and procedures during your employment with the company. |
| **I Agree** | ☐ |

| | |
|---|---|
| **Document** | Availability Form |
| **Instructions** | Please print and fill out the appropriate section that applies to you. When listing your availability, include as many hours as you are able to work, even times outside the stores regular hours of operation.

Please know the more hours you are available, the more hours you might be scheduled, thus the more opportunity to leverage your earnings.

Bring this form with you on your first day of work. |
| **Signature Statement** | By clicking on the I agree box, you are acknowledge that you have received a copy of the Availability and Job Interest Form and will provide a completed copy to your manager on your first day of employment. |
| **I Agree** | ☐ |

| | |
|---|---|
| **Document** | Exchange Notice |
| **Instructions** | The health care reform law will require almost all Americans to have health care coverage or be subject to a penalty tax. To assist you as you evaluate options for you and your family, this Exchange Notice provides you some basic information about the new Marketplace for buying health insurance and about health coverage at Burlington. |
| **Signature Statement** | By checking the box below, you acknowledge that you have received a copy of the Exchange Notice, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| **I Agree** | ☐ |

| | |
|---|---|
| **Document** | Stores Handbook US - February 2015 |
| **Instructions** | Our handbook for store associates is a valuable tool for understanding our corporate policies and procedures, your responsibilities, and what you can expect as a Burlington associate. Please review this document and check the acknowledgement box at the bottom once finished. |
| **Signature Statement** | By checking the box below, you acknowledge that you have received a copy of the Associate Handbook, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| **I Agree** | ☐ |

| | |
|---|---|
| **Document** | Confidentiality Policy |
| **Instructions** | In the course of your employment at Burlington you may be exposed, directly or indirectly, to sensitive or confidential information that should not be shared with other associates or individuals who do not work for Burlington. The attached document explains how our confidentiality policy works. Please review this document and check the acknowledgement box at the bottom. |
| **Signature Statement** | By checking the box below, you acknowledge that you have received a copy of the Confidentiality Policy, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| **I Agree** | ☐ |

| | |
|---|---|
| **Document** | Policy Against Unlawful Discrimination or Harassment - US Stores |

| | |
|---|---|
| **Instructions** | At Burlington, we want to create a work environment that welcomes and supports all associates  We do not tolerate discrimination of any kind and we want you to be aware of our policies and procedure related to discrimination.  Please review this document and check the acknowledgement box at the bottom. |
| **Signature Statement** | By checking the box below, you acknowledge that you have received a copy of the Policy Against Unlawful Discrimination or Harassment, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| **I Agree** | ☐ |

| | |
|---|---|
| **Document** | 📄 STEPS |
| **Instructions** | At Burlington, we believe in building strong relationships that contribute to a positive, productive, and friendly work environment, but we realize that concerns in the workplace do sometimes occur. Burlington is pleased to offer you the unique benefit of STEPS (Steps to Effective Problem Solving) - our early dispute resolution program. |
| **Signature Statement** | By checking the box below, you acknowledge you have received the Steps to Effective Problem Solving (STEPS) packet materials. |
| **I Agree** | ☐ |

| | |
|---|---|
| **Document** | 📄 Wage Payment Options for Paycheck Eligible States |
| **Instructions** | At Burlington, we offer convenient options to receive your wages.  The above packet provides information about those options.  We believe this packet will assist you in deciding which option or options work best for you |
| **Signature Statement** | By checking the box below, you acknowledge that you have received information regarding the available wage payment options and reviewed it prior to choosing how you would be paid. |
| **I Agree** | ☐ |

| | |
|---|---|
| **Document** | 📄 Acceptable Use Policy - Stores - 12012014 |
| **Instructions** | The Company Email, Internet and other technology resources are the property of Burlington and use of these systems constitutes your agreement to abide by the Company policies  All associates who have been granted access to use these systems are covered by this policy   Please review the materials included as part of your on-boarding process. |
| **Signature Statement** | By checking the box below, you acknowledge that you have received a copy of the Acceptable Use Policy, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| **I Agree** | ☐ |

| | |
|---|---|
| **Comment** | |

[Submit]  [Save for Later]  [Cancel]

# EXHIBIT E



Dear Associate,

Here at Burlington, we believe in building strong work relationships that contribute to a positive, productive, and friendly work environment, but we realize that concerns in the workplace do sometimes occur.  You may encounter a problem or complaint that if left unresolved could affect job satisfaction and work performance.

To assist in these cases, Burlington is pleased to provide you the unique benefit of STEPS (Steps to Effective Problem Solving) – our early dispute resolution program.

The STEPS program provides multiple opportunities to resolve almost any type of workplace dispute, however large or small.  It helps reinforce the importance of listening to each other and understanding different points of view.  The key to STEPS is *early* resolution, helping to preserve our work relationships, uphold our company's Core Values, exercise transparency with open and honest two-way communication, and enjoy the kind of work environment that supports both individual and company success.

In the event you have or develop concerns related to your employment, the STEPS program is a resource to having them heard and resolved.  Most concerns are resolved early in the program, in Step 1: Open Door, or Step 2: Request for Reconsideration.  In the rare case that a concern involving a legal claim is still unresolved, Step 3: Arbitration is available.  Legal claims are resolved by an arbitrator from the American Arbitration Association (AAA), the largest provider of early dispute resolution services in the United States, rather than by a judge or jury in a court.  Unless you choose to opt-out of the arbitration program within the prescribed time period, you are covered by the arbitration program throughout your employment with Burlington, and after employment should you leave the company.

A key feature of the STEPS program is that you – the associate – drive the process.  You decide if and when you would like to move through the steps to achieve resolution.

Enclosed for your review and reference, is the Burlington Stores, Inc.'s Early Dispute Resolution Program Rules and Procedures, which is a comprehensive description of the STEPS program.  To learn more, an eCourse is available to you in our LMS (Learning Management System) or you can speak with your Human Resources Representative.  Our door is always open.

Sincerely,

Joyce Manning
EVP, Human Resources
Burlington Stores, Inc.





## **STEPS** is Burlington's early dispute resolution program.



**S**TEPS
**T**O
**E**FFECTIVE
**P**ROBLEM
**S**OLVING

The goal of **STEPS** is to:

- Preserve our work relationships
- Uphold our company Core Values
- Exercise transparency with open and honest two-way communication
- Enjoy the kind of work environment that supports both individual and company success

**STEPS** gives you a way to express your concerns and resolve workplace issues using a structured, unbiased, and fair process.

### Step 1: Open Door

You are encouraged to discuss your situation with your supervisor or Human Resources Representative who will work to understand and resolve your workplace issues.

### Step 2: Request for Reconsideration

In cases where workplace issues are not resolved in Step 1, you can submit a written request to the STEPS Program Administrator for an independent review of your concern.

### Step 3: Arbitration

In those rare situations where an issue cannot be resolved using Step 1 or Step 2 (whether or not you proceeded through both Steps), you may request arbitration, which is much like a court proceeding, but less formal and less time-consuming.



**INTERESTED IN LEARNING MORE?**
An eCourse is available to you in our LMS (Learning Management System).



**QUESTIONS? CONTACT US:**
STEPS@burlingtonstores.com
Toll-free: 1-844-500-STEP (7837)
Fax: 609-589-3595



This document is for general information purposes only and all program details are governed by the Burlington Stores, Inc.'s Early Dispute Resolution Program Rules & Procedures

July 2014



## Burlington Stores, Inc.'s Early Dispute Resolution Program Rules & Procedures

Burlington Stores, Inc. and its affiliates, subsidiaries and successors (jointly and severally referred to as the "Company") care about our associates.  From time to time you can have problems at work and even routine differences can get bigger when there is not a resource to resolve them.

The Company set out to find a more effective way to resolve workplace disputes.  We wanted a way that benefits everyone involved.  Burlington's Open Door Policy was a great place to start.  Through the years many issues have been resolved through the use of the Open Door where an associate worked with his or her supervisors and/or Human Resources to resolve issues in the workplace.  Burlington is now strengthening its Open Door by adding new features.  Together with the Open Door they become our early dispute resolution program, which opens even more doors to fair and efficient resolutions for you.  Steps for Effective Problem Solving or "STEPS" builds upon the success of the Open Door Policy by giving you more choices to be heard internally and to resolve your concerns.

We are convinced that a full internal review of differences is the most efficient and productive way to resolve workplace disputes.  It also maintains good working relationships and avoids unnecessary confrontations in the workplace.  So, the first stop in the STEPS Program is Step 1: Open Door.  The Open Door continues to be the foundation of our Program and can be your first stop to resolving all types of workplace disputes.

If for whatever reason Step 1 is not applicable or does not result in a resolution, you can request to have your issue reviewed by an investigator who was not involved at Step 1.  The investigator could be a member of the HR Team or a member of the Company's Associate Relations team who was not involved in the Step 1: Open Door process.  He or she will investigate your issue from the beginning and be wholly independent of decision makers involved at Step 1.  At the conclusion of the investigation, you will receive the findings of the investigation in writing.  Both Step 1: Open Door and Step 2: Request for Reconsideration are available for any disputes related to your employment with the Company.

In those rare situations where, for whatever reason, your dispute involves a legal claim that was not resolved at Step 1 or Step 2 (whether or not you proceeded through both Steps) and you wish to pursue it further, STEPS provides for a way to resolve the matter outside of the Company without court involvement: Step 3:  Arbitration.  Both you and the Company agree that Arbitration is the exclusive means to resolve covered legal claims that were not resolved or



1

addressed in Step 1 or Step 2, whether those claims are brought by you against the Company or brought by the Company against you.  This process involves an Arbitrator.  An Arbitrator is a professional, neutral third-party selected by both you and the Company.  With the exception of the filing fee (which is on a sliding scale based on your pay), Arbitration is paid for by the Company.  After a hearing, the Arbitrator renders a final decision.  The decision is binding on both the Company and you.

In Step 3, you and the Company agree to arbitrate covered legal claims instead of bringing them to a court or jury trial.  You and the Company also agree that while a party is able to recover whatever damages and other individual relief that would be available to that party in court for the claims brought in arbitration, a class action, collective action or representative action is not permitted in arbitration.  Nothing in STEPS, however, prevents you from filing, at any time, a charge or complaint with a government agency like the Equal Employment Opportunity Commission (the EEOC), the U.S. Department of Labor (the DOL) or the National Labor Relations Board (the NLRB), for example.

You and the Company mutually agree to arbitrate covered disputes if you accept or continue employment with the Company after the Effective Date (July 27, 2014).  However, you also will be given the option to exclude yourself from arbitration by completing an Arbitration Opt-Out Form.  If you do not elect to be excluded from arbitration within the timeframe set forth in the Arbitration Opt-Out Form, you and the Company are covered by arbitration.  The choice is yours, and whether you choose to remain covered by arbitration or to exclude yourself will have no impact on your employment – positive or negative.

The following pages explain how the STEPS Program works.

2

July 2014

**Step 1: The Open Door**

The open door encourages you to try to resolve any problems at work with your immediate supervisor or human resources representative.  If you are not satisfied with this response or you need to talk to someone other than your supervisor, you may take your issue to a Company executive with whom you feel comfortable.  In addition to attempting to resolve concerns with your supervisor or other members of your management team, you are also encouraged to contact your Human Resources representative for advice or assistance at any time.

**Step 2: Request for Reconsideration**

If you are not satisfied with the result of the open door review of your concern (Step 1) or did not pursue such review, you may go to Step 2.  To do that, you can file a written request for review to the STEPS Program Administrator (contact information below).  Once received, your request is referred to an appropriate Human Resources or Associate Relations executive who was not involved at Step 1 (if you sought Step 1 review), and there will be a new investigation of your concern.  At the conclusion of the investigation, generally within forty-five (45) days of submitting the Step 2 request, you will receive a written decision.

Step 1 and Step 2 are available for any disputes arising out of or relating to your employment at the Company.  Step 3 is available and required only for claims involving legally protected rights. "Legally protected rights" means claims for relief that an individual could obtain in a court or other adjudicatory body (although, as noted above, nothing in the STEPS Program prevents you from filing a charge or complaint with an administrative agency such as the EEOC, DOL or NLRB).

**Step 3: Arbitration – Rules and Procedures**

      1.    <u>Arbitration</u>.  Arbitration under these Step 3 Rules and Procedures (the "Rules and Procedures") is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

      2.    <u>Individuals Covered</u>.   All newly hired store associates and existing store associates ("Associate" or "Associates") who have accepted or continue to work in a job with the Company and not returned an "Arbitration Opt-Out Form" within the prescribed time limits (see Section 15 below) are covered by Step 3:  Arbitration.

      3.    <u>Claims Covered</u>.  Step 3:  Arbitration applies to any dispute arising out of or related to your employment with or termination from the Company (including any dispute

against any officer, director or alleged agent of the Company), regardless of its date of accrual and survives after the employment relationship terminates.   Except as these Rules and Procedures otherwise provide, Step 3:  Arbitration is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration, and you and the Company agree that any legal dispute or controversy covered by these Rules and Procedures or arising out of, relating to, or concerning the validity, enforceability or breach of these Rules and Procedures shall be resolved by binding arbitration.

     a.    <u>Examples of Covered Claims</u>.  Except as these Rules and Procedures otherwise provide, Step 3:  Arbitration applies, without limitation, to disputes arising out of or related to the employment relationship or the termination of that relationship, trade secrets, unfair competition, compensation, classification, minimum wage, seating, expense reimbursement, overtime, breaks and rest periods, termination, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, state or municipal statutes or regulations addressing the same or similar subject matters, and all other federal, state or municipal legal claims arising out of or relating to your employment or the termination of employment (including without limitation post-employment defamation or retaliation).

     b.    <u>Effective Date</u>.  The Effective Date of this STEPS Program, including these Step 3 Arbitration Rules and Procedures is July 27, 2014.  Unless you timely submit an Arbitration Opt-Out Form, any covered employment-related claims as described above that are brought on or after the Effective Date must be arbitrated pursuant to these Step 3 Arbitration Rules and Procedures.  Lawsuits currently pending in court as of the Effective Date are not covered.

     c.    <u>Limitations and Exclusions</u>.

     i.    Step 3:  Arbitration does not apply to claims for workers compensation, state disability insurance or unemployment insurance benefits.  However, statutory or common law claims made outside of these state insurance

systems alleging that the Company retaliated or discriminated against an you for filing such a claim shall be subject to arbitration.

ii.      Regardless of any other terms of these Rules and Procedures, a claim may be brought before and remedies awarded by an administrative agency if applicable law permits the agency to adjudicate the claim notwithstanding the existence of an agreement to arbitrate.  Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission, the U.S. Department of Labor, or the National Labor Relations Board.  Nothing in these Rules and Procedures shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

iii.      Disputes that may not be subject to a predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of Step 3: Arbitration.

iv.      Nothing contained in these Rules and Procedures shall be construed to prevent or excuse Associate (individually or in concert with others) or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and Step 3 Arbitration is not intended to be a substitute for the utilization of such procedures.

v.      Either party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such relief.

4.      Class, Collective and Representative Action Waiver.  These Rules and Procedures affect your ability to participate in class, collective or representative actions.  Both the Company and you agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis on behalf of others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any such class, collective, representative or private attorney general proceeding ("Class Action Waiver"). The

Class Action Waiver does not apply to any claim you bring in arbitration as a private attorney general solely on your own behalf and not on behalf of others. Notwithstanding any other provision of these Rules and Procedures or the AAA Rules, disputes regarding the validity, enforceability or breach of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.

In any case in which (1) the dispute is filed as a class, collective, representative or private attorney general action and (2) a civil court of competent jurisdiction finds all or part of the Class Action Waiver unenforceable, the class, collective, representative and/or private attorney general action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

You will not be retaliated against, disciplined or threatened with discipline as a result of your exercising your rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum. However, the Company may lawfully seek enforcement of these Rules and Procedures and the Class Action Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. The Class Action Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

5.      <u>Arbitration Rules and Locale</u>.   Arbitration shall be in accordance with the Employment Arbitration Rules of the American Arbitration Association ("AAA Rules") then in effect (as modified below), and not by court or jury trial, and shall be held (unless the parties agree in writing otherwise) within 45 miles of where you are or were last employed by the Company.  The AAA Rules may be found at www.adr.org, or by searching for "AAA Employment Arbitration Rules" using a service such as www.Google.com, on the Company's web portal under the Human Resources tab or by asking your Human Resources Representative for a copy of the AAA Rules.  If for any reason the AAA will not administer the arbitration, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator.

6.      <u>Right to Representation</u>.   Both you and the Company shall have the right to be represented by an attorney.   If you elect not to be represented by an attorney during the arbitration proceedings, the Company will not have an attorney present during the arbitration proceedings.

7.     <u>Arbitration Fees and Costs</u>.  The Company shall pay all costs and expenses unique to arbitration, including without limitation the daily or hourly fees and expenses of the arbitrator, the cost of a court reporter to transcribe the hearing (if any), and the expense of renting a room in which the arbitration hearing is held.  Incidental Costs include such items as photocopying, witness fees, the cost of a court reporter to transcribe a deposition, and parking. The Company will cover a maximum of One Thousand Five Hundred Dollars ($1,500) per Associate in a rolling twelve (12) month period for the Associate's attorney's fees and Incidental Costs associated with arbitration of his or her claims.  In the case of such Incidental Costs as deposition transcripts and court reporter fees, the Company may pay such costs directly to the vendor.   Otherwise, reimbursement to you will occur following the conclusion of the proceedings upon submission to the Arbitrator of your bills for costs.

8.     <u>Initiating Arbitration</u>.  In order to initiate Step 3 Arbitration, a party must give written notice to the other party. If you initiate arbitration, you must give written notice to the STEPS Program Administrator at the e-mail or mailing address at the end of these Rules and Procedures, below.   If the Company initiates an arbitration claim against you, the STEPS Program Administrator will file a demand for arbitration with the AAA and send written notice to your home address on file with the Company.

The written notice shall include a statement of the nature of the claim together with the documents in support of the claim, the relevant facts, the remedies including any amount of damages being sought, and the address that the party initiating the arbitration, the "Claimant," will use for the purpose of the arbitration.  Upon the Company's receipt of a written notice of a claim brought by you, the STEPS Program Administrator will file a demand for arbitration with the AAA, if you have not already done so.

9.     <u>Selecting an Arbitrator</u>.  Both you and the Company shall participate equally in the selection of an Arbitrator to decide the arbitration.  After receiving and/or filing a Demand for Arbitration Form, the STEPS Program Administrator shall ask AAA to provide the Company and you with a list of seven (7) neutral arbitrators with experience in deciding employment disputes.  You and the Company then shall have the opportunity to review the background of the arbitrators by examining the materials provided by AAA.  Within seven (7) calendar days after the list is received, you and the Company shall take turns striking unacceptable arbitrators from the panel until only one remains.  You and the Company will inform AAA of the remaining arbitrator who will decide the dispute.  However, if both parties agree that the remaining arbitrator is unacceptable, a second panel will be requested from AAA and the selection

process will begin again.  If the parties cannot agree that anyone on the second panel is acceptable, either party may request AAA to simply appoint an Arbitrator who was not on either panel but who has expertise in deciding employment disputes.

10.    Responsive Pleadings, Amendments and Discovery.  The AAA Rules shall apply, with the following modifications:

a.    Responsive Pleadings.  The deadlines currently set forth in AAA Rule 4 for serving on the opposing party and filing with the AAA answers to claims, counterclaims, and answers to counterclaims shall be extended from 15 to 30 days.

b.    Interrogatories/Document Requests.  Without seeking permission from the Arbitrator, each party may send to the opposing party one (1) set of up to twenty (20) interrogatories.  Interrogatories are written questions asked by one party to the other, who must answer under oath.  Such interrogatories may include a request for all documents upon which the responding party relies in support of its answers to the interrogatories.  Answers to interrogatories and responsive documents must be served on the requesting party within twenty-one (21) calendar days of receipt of the interrogatories.

c.    Depositions.  A deposition is an oral statement that is given under oath by one party in response to specific questions from the other party, and is usually recorded or transcribed by a court reporter.  Each party shall be entitled to take the deposition of up to three (3) relevant individuals of the party's choosing without first seeking leave from the Arbitrator.  The party taking the deposition shall be responsible for all associated costs, such as the cost of a court reporter and the cost of a transcript; however, see Section 7 above for information regarding reimbursement of an Associate's Incidental Costs.

d.    Additional Discovery.  Upon the request of any party and a showing of reasonable need, the Arbitrator may permit additional relevant discovery, but only if the Arbitrator finds that such additional discovery is not unduly burdensome and will not unduly delay the conclusion of the arbitration.  An Arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.  A subpoena is a command to an individual to appear at a certain place and time and give testimony.  A subpoena also may require that the individual bring documents when he or she gives testimony.

    e.    <u>Discovery Disputes</u>.  The Arbitrator shall decide all disputes related to discovery.  Such decisions shall be final and binding on the parties.  In ruling on discovery disputes, the Arbitrator need not follow but may consult the discovery rules contained in the Federal Rules of Civil Procedure.

11.    <u>Hearing Procedure</u>.  The AAA Rules apply with the following modifications:

    a.    <u>Witnesses</u>.  Witnesses shall testify under oath, and the Arbitrator shall afford each party a sufficient opportunity to examine his, her or its own witnesses and cross-examine witnesses of the other party.  Any party presenting a witness will be responsible for paying that witness' fees and expenses. See Section 7 above for reimbursement of an Associate's Incidental Costs.

    b.    <u>Hearing Subpoenas</u>.  Either party or the Arbitrator at a party's request may issue subpoenas compelling the attendance of any other person necessary for the issuing party to prove its case at the hearing.  The Arbitrator shall have the authority to issue, enforce and/or cancel such subpoenas.  Subpoenas for testimony or production of records at the Arbitration hearing must be issued no less than ten (10) calendar days prior to the commencement of an arbitration hearing or noticed deposition.  The party issuing the subpoena or requesting that the Arbitrator do so shall be responsible for the fees and expenses associated with the issuance and enforcement of the subpoena, and with the attendance of the witness at the arbitration hearing or deposition, subject to any remedies that may be awarded by the Arbitrator to a prevailing party.

    c.    <u>Sequestration</u>.  The Arbitrator shall sequester all witnesses who will testify at the arbitration, provided that the Arbitrator shall permit the Associate involved in the arbitration and the Company's designated representative to remain throughout the arbitration, even though they may or may not testify at the hearing.

    d.    <u>Evidence</u>.  The parties may offer evidence that is relevant and material to the dispute and shall produce any and all non-privileged evidence that the Arbitrator deems necessary to a determination of the dispute.  The Arbitrator need not specifically follow the Federal Rules of Evidence, although they may be consulted to resolve questions regarding the admissibility of particular matters.

    e.    <u>Burden of Proof</u>.  A party has the burden of proving a claim or defense according to the same burdens of proof that would apply if the case were pending in court.

     f.     <u>Briefing</u>.  Each party shall have the opportunity to submit without first seeking leave from the Arbitrator one (1) dispositive motion and supporting brief, one (1) pre-hearing brief, and within thirty days after the arbitration hearing concludes one (1) post-hearing brief, which is a written statement of facts and law, in support of its position.  Submission of such briefs is not required; however, briefs shall be typed and shall be limited in length to twenty (20) double-spaced letter sized pages.

     g.     <u>Transcription</u>.  The parties may arrange for transcription of the arbitration by a certified court reporter.  The Company will cover the cost.

     12.     <u>Award</u>.  Within thirty (30) days after the later of the close of the hearing or the receipt of post-hearing briefs, if any, the Arbitrator shall mail to the parties a written decision specifying appropriate remedies, if any.  The Arbitrator's award shall include findings of fact and conclusions of law.  The Arbitrator must follow applicable law and may award only those remedies that would have applied had the matter been heard in court.  The arbitration and any award rendered pursuant to it shall be enforceable and subject to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

     13.     <u>Settlement</u>.  The parties may settle their dispute at any time without involvement of the Arbitrator.

     14.     <u>Enforceability/Severability</u>. These Rules and Procedures are the full and complete agreement relating to the formal resolution of disputes covered by Step 3: Arbitration.  In the event that any portion of these Rules and Procedures are deemed unenforceable, the remainder of these Rules and Procedures will be enforceable. If the Class Action Waiver in Section 4 of these Rules and Procedures is deemed to be unenforceable, the Company and Associate agree that these Rules and Procedures are otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

     15.     <u>Your Right to Opt Out of Arbitration</u>.  Arbitration is not a mandatory condition of your employment at the Company, and therefore you may notify the Company that you wish to opt out and not be subject to Step 3 Arbitration.  If you want to opt-out, you must notify the Company of your intention to opt out by submitting a signed and dated "Arbitration Opt-Out Form" (contained in the packet in which you received these Rules and Procedures and available on the Company's web portal under the Human Resources tab) to the STEPS Office Program Administrator, 1830 Route 130 North, Burlington, New Jersey 08016.  In order to be effective, your Arbitration Opt-Out Form must be postmarked within 30 days of your receipt of these

Step 3:  Arbitration Rules and Procedures, except if you are a current associate as of the Effective Date of July 27, 2014, it must be postmarked no later than September 10, 2014.  If you timely opt-out as provided in this paragraph you will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to these Step 3 Arbitration Rules and Procedures.  Should you not opt-out of arbitration within 30 days of your receipt of these Step 3:  Arbitration Rules and Procedures (or by September 10, 2014, if applicable), continuing your employment constitutes mutual acceptance of them by you and the Company.  You have the right to consult with counsel of your choice concerning these Step 3:  Arbitration Rules and Procedures.


**STEPS Office**
**Attention:  Program Administrator**
**Burlington Stores, Inc.**
**1830 Route 130 North**
**Burlington, New Jersey 08016**

| | |
|---|---|
| **Phone (toll free):** | **1-844-500-STEP (7837)** |
| **Fax:** | **609-589-3595** |
| **E-Mail:** | **STEPS@burlingtonstores.com** |

July 2014



### STEPS PROGRAM OPT-OUT FORM

BURLINGTON PARTICIPATES IN A MUTUAL AGREEMENT TO ARBITRATE ASSOCIATE RELATIONS CLAIMS.  IF YOU <u>DO NOT</u> WANT TO PARTICIPATE IN STEP 3: ARBITRATION, PLEASE COMPLETE THIS DOCUMENT AND <u>MAIL</u> TO THE STEPS PROGRAM ADMINISTRATOR, <u>POSTMARKED NO LATER THAN 30 DAYS FROM YOUR DATE OF HIRE</u>:

Burlington Stores Inc.
1830 Route 130 North
Burlington, NJ 08016
**Attn:  STEPS Program Administrator**

**AUTHORIZATION:**
By signing below, I acknowledge I have received a copy of the Burlington Stores, Inc.'s Early Dispute Resolution Program Rules & Procedures and <u>am declining the benefits of arbitration.</u>

I understand I will receive a letter confirming receipt of my Opt-Out Form and if I do <u>not</u> receive this letter within 14 days of mailing this form, it is my responsibility to call the STEPS Program Administrator toll-free at 1-844-500-STEP (7837).

*Name (please print):* _____

*Home Address:* _____
               *Street Number and Name*                  *Apt.*

               _____
               *City*                 *State*          *Zip*

*Signature:* _____

*Date:* _____

*Associate ID:* _____

*Store Number:* _____

**Important Note:**  We encourage you to make a copy of this form for your records.



# EXHIBIT F



workday

On behalf of: Legal Demo

← 1 of 1

Review Documents  Review Documents for Onboarding for Legal Demo ···

5 second(s) ago · Effective 05/04/2016

**Errors: 1**
STEPS must be signed/acknowledged before submitting the task.

Below are several important documents related to your employment with Burlington.  Please review all of the documents carefully.  If you wish, you can print the documents or save them to your personal computer for future reference.  In addition, you also have the ability to sign into Workday and reference them at any time after you begin your employment.  Should you have any questions about any of the documents, please do not hesitate to contact your manager or human resources representative.

On this screen as well as on several screens to follow, you will be asked to check or click certain boxes or buttons.  By checking or clicking those boxes or buttons, you agree to use an electronic signature to acknowledge your receipt of Burlington materials, to verify information, and to provide your consent or agreement to certain employment matters (such as, for example, your wage payment method).  Your electronic signature is as legally binding as an ink signature

Documents

| | |
|---|---|
| Document | Code of Conduct Dec. 2015 |
| Instructions | At Burlington, we expect all associates to hold themselves and their fellow associates to the highest standards of business conduct and ethics. To ensure you are aware of our policies, please review our Code of Business Conduct and Ethics and check the acknowledgement box at the bottom. |
| Signature Statement | By checking the box below, you acknowledge that you have received a copy of the Code of Business Conduct and Ethics, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| I Agree | ☑ |

| | |
|---|---|
| Document | Code of Conduct Dec. 2015 |
| Instructions | At Burlington, we expect all associates to hold themselves and their fellow associates to the highest standards of business conduct and ethics. To ensure you are aware of our policies, please review our Code of Business Conduct and Ethics and check the acknowledgement box at the bottom. |
| Signature Statement | By checking the box below, you acknowledge that you have received a copy of the Code of Business Conduct and Ethics, that you have read and fully understand these policies |
| I Agree | ☑ |

**Errors: 1**
STEPS must be signed/acknowledged before submitting the task.

| | |
|---|---|
| Document | Attendance Policy - Stores 102015 |
| Instructions | Working in a store is can be a lot of fun and very satisfying. However, when a fellow team member fails to come in to work it places a significant burden on the rest of the team. We have developed an Attendance Policy to help ensure all associates understand the importance of coming to work when expected. Please review this document and check the acknowledgement box at the bottom when you are finished. |
| Signature Statement | By checking the box below, you acknowledge that you have received a copy of the Attendance Policy, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| I Agree | ☑ |

| | |
|---|---|
| Document | Attendance Policy - Stores 102015 |
| Instructions | Working in a store is can be a lot of fun and very satisfying. However, when a fellow team member fails to come in to work it places a significant burden on the rest of the team. We have developed an Attendance Policy to help ensure all associates understand the importance of coming to work when expected. Please review this document and check the acknowledgement box at the bottom when you |
| Signature Statement | By checking the box below, you acknowledge that you have received a copy of the Attendance Policy, that you have read and fully understand these policies and procedures, and procedures during your employment with the company. |
| I Agree | ☑ |

**Errors: 1**
STEPS must be signed/acknowledged before submitting the task.

| | |
|---|---|
| Document | Availability Form |
| Instructions | Please print and fill out the appropriate section that applies to you. When listing your availability, include as many hours as you are able to work, even times outside the stores regular hours of operation |
| | Please know the more hours you are available, the more hours you might be scheduled, thus the more opportunity to leverage your earnings |
| | Bring this form with you on your first day of work. |
| Signature Statement | By clicking on the I agree box, you are acknowledge that you have received a copy of the Availability and Job Interest Form and will provide a completed copy to your manager on your first day of employment |
| I Agree | ☑ |

| | |
|---|---|
| Instructions | Please print and fill out the appropriate section that applies to you. When listing your availability, include as many hours as you are able to work, even times outside the stores regular hours of operation. |
| | Please know the more hours you are available, the more hours you might be scheduled, thus the more opportunity to leverage your earnings |
| | Bring this form with you on your first day of work. |
| Signature Statement | By clicking on the I agree box, you are acknowledge that you have received a copy of the Availability and Job Interest Form and will provide a completed copy to your manager d |
| I Agree | ☑ |

**Errors: 1**
STEPS must be signed/acknowledged before submitting the task.

| | |
|---|---|
| Document | Exchange Notice |
| Instructions | The health care reform law will require almost all Americans to have health care coverage or be subject to a penalty tax. To assist you as you evaluate options for you and your family, this Exchange Notice provides you some basic information about the new Marketplace for buying health insurance and about health coverage at Burlington. |



**Signature Statement** — By checking the box below, you acknowledge that you have received a copy of the Exchange Notice, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company.

**I Agree** ☑

---

**Document** — Exchange Notice

**Instructions** — The health care reform law will require almost all Americans to have health care coverage or be subject to a penalty tax. To assist you as you evaluate options for you and your basic information about the new Marketplace for buying health insurance and about health coverage at Burlington.

**Signature Statement** — By checking the box below, you acknowledge that you have received a copy of the Exchange Notice, that you have read and fully understand these policies and procedures, and procedures during your employment with the company.

**I Agree** ☑

> **Errors: 1** ⊗
> ⊙ STEPS must be signed/acknowledged before submitting the task.

---

**Document** — Stores Handbook US - February 2015

**Instructions** — Our handbook for store associates is a valuable tool for understanding our corporate policies and procedures, your responsibilities, and what you can expect as a Burlington associate. Please review this document and check the acknowledgement box at the bottom once finished.

**Signature Statement** — By checking the box below, you acknowledge that you have received a copy of the Associate Handbook, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company.

**I Agree** ☑

---

**Document** — Stores Handbook US - February 2015

**Instructions** — Our handbook for store associates is a valuable tool for understanding our corporate policies and procedures, your responsibilities, and what you can expect as a Burlington associate. Please review this document and check the acknowledgement box at the bottom once finished.

**Signature Statement** — By checking the box below, you acknowledge that you have received a copy of the Associate Handbook, that you have read and fully understand these policies and procedures, procedures during your employment with the company.

**I Agree** ☑

> **Errors: 1** ⊗
> ⊙ STEPS must be signed/acknowledged before submitting the task.

---

**Document** — Confidentiality Policy

**Instructions** — In the course of your employment at Burlington you may be exposed, directly or indirectly, to sensitive or confidential information that should not be shared with other associates or individuals who do not work for Burlington. The attached document explains how our confidentiality policy works. Please review this document and check the acknowledgement box at the bottom.

**Signature Statement** — By checking the box below, you acknowledge that you have received a copy of the Confidentiality Policy, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company.

**I Agree** ☑

---

**Document** — Confidentiality Policy

**Instructions** — In the course of your employment at Burlington you may be exposed, directly or indirectly, to sensitive or confidential information that should not be shared with other associates or individuals who do not work for Burlington. The attached document explains how our confidentiality policy works. Please review this document and check the acknowledgement box at the bottom.

**Signature Statement** — By checking the box below, you acknowledge that you have received a copy of the Confidentiality Policy, that you have read and fully understand these policies and procedures, and procedures during your employment with the company.

**I Agree** ☑

> **Errors: 1** ⊗
> ⊙ STEPS must be signed/acknowledged before submitting the task.

---

**Document** — Policy Against Unlawful Discrimination or Harassment - US Stores

**Instructions** — At Burlington, we want to create a work environment that welcomes and supports all associates. We do not tolerate discrimination of any kind and we want you to be aware of our policies and procedure related to discrimination. Please review this document and check the acknowledgement box at the bottom.

**Signature Statement** — By checking the box below, you acknowledge that you have received a copy of the Policy Against Unlawful Discrimination or Harassment, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company.

**I Agree** ☑

---

**Document** — STEPS

**Instructions** — At Burlington, we want to create a work environment that welcomes and supports all associates. We do not tolerate discrimination of any kind and we want you to be aware of our policies and procedure related to discrimination. Please review this document and check the acknowledgement box at the bottom.

**Signature Statement** — By checking the box below, you acknowledge that you have received a copy of the Policy Against Unlawful Discrimination or Harassment, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company.

**I Agree** ☑

> **Errors: 1** ⊗
> ⊙ STEPS must be signed/acknowledged before submitting the task.

---

**Document** — STEPS

**Instructions** — At Burlington, we believe in building strong relationships that contribute to a positive, productive, and friendly work environment, but we realize that concerns in the workplace do sometimes occur. Burlington is pleased to offer you the unique benefit of STEPS (Steps to Effective Problem Solving) - our early dispute resolution program.

**Signature Statement** — By checking the box below, you acknowledge you have received the Steps to Effective Problem Solving (STEPS) packet materials.

I Agree

Document    📄 Wage Payment Options for Paycheck Eligible States

Document    📄 STEPS

Instructions    At Burlington, we believe in building strong relationships that contribute to a positive, productive, and friendly work environment, but we realize that concerns in the workplace do sometimes occur. Burlington is pleased to offer you the unique benefit of STEPS (Steps to Effective Problem Solving) - our early dispute resolution program.

Signature Statement    By checking the box below, you acknowledge you have received the Steps to Effective Problem Solving (STEPS) packet materials.

I Agree

**Errors: 1**
- STEPS must be signed/acknowledged before submitting the task.

Document    📄 Wage Payment Options for Paycheck Eligible States

Instructions    At Burlington, we offer convenient options to receive your wages.  The above packet provides information about those options.  We believe this packet will assist you in deciding which option or options work best for you.

Signature Statement    By checking the box below, you acknowledge that you have received information regarding the available wage payment options and reviewed it prior to choosing how you would be paid.

I Agree ✅

Instructions    At Burlington, we believe in building strong relationships that contribute to a positive, productive, and friendly work environment, but we realize that concerns in the workplace do sometimes occur. Burlington is pleased to offer you the unique benefit of STEPS (Steps to Effective Problem Solving) - our early dispute resolution program.

Signature Statement    By checking the box below, you acknowledge you have received the Steps to Effective Problem Solving (STEPS) packet materials.

I Agree

**Errors: 1**
- STEPS must be signed/acknowledged before submitting the task.

Document    📄 Wage Payment Options for Paycheck Eligible States

Instructions    At Burlington, we offer convenient options to receive your wages  The above packet provides information about those options.  We believe this packet will assist you in deciding which option or options work best for you.

Signature Statement    By checking the box below, you acknowledge that you have received information regarding the available wage payment options and reviewed it prior to choosing how you would be paid.

I Agree ✅

Document    📄 Acceptable Use Policy - Stores - 12012014

Instructions    The Company Email, Internet and other technology resources are the property of Burlington and use of these systems constitutes your agreement to abide by the Company policies. All associates who have been granted access to use these systems are covered by this policy.  Please review the materials included as part of your on-boarding process.

Signature Statement    By checking the box below, you acknowledge that you have received a copy of the Acceptable Use Policy, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company.

I Agree ✅

Comment

[ Submit ]  [ Save for Later ]  [ Cancel ]

# EXHIBIT G

Maintain Worker Documents: Terrence Lee
(Terminated)



Reviewed Documents
Standard Documents

| Document | Effective Date | Document Attachment | Signature Type | Signed By | Signature Date | Signature Statement |
|---|---|---|---|---|---|---|
| Availability Form | 08/01/2014 | Availability Form.pdf | e-signature | Terrence Lee (Terminated) | 08/07/2015 06:30:28 PM | By clicking on the I agree box, you are acknowledge that you have received a copy of the Availability and Job Interest Form and will provide a completed copy to your manager on your first day of employment. |
| Policy Against Unlawful Discrimination or Harassment - US Stores | 01/01/1900 | US Stores - Policy Against Unlawful Discrimination or Harassment as of 07312014.pdf | e-signature | Terrence Lee (Terminated) | 08/07/2015 06:30:28 PM | By checking the box below, you acknowledge that you have received a copy of the Policy Against Unlawful Discrimination or Harassment, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| Confidentiality Policy | 01/01/1900 | Confidentiality Policy as of 07312014.pdf | e-signature | Terrence Lee (Terminated) | 08/07/2015 06:30:28 PM | By checking the box below, you acknowledge that you have received a copy of the Confidentiality Policy, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| Acceptable Use Policy - Stores - 12012014 | 01/23/2015 | Acceptable Use Policy - Stores - 12012014.pdf | e-signature | Terrence Lee (Terminated) | 08/07/2015 06:30:28 PM | By checking the box below, you acknowledge that you have received a copy of the Acceptable Use Policy, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| Stores Handbook US - February 2015 | 02/11/2015 | Stores Handbook US - February2015. | e-signature | Terrence Lee (Terminated) | 08/07/2015 06:30:28 PM | By checking the box below, you acknowledge that you have received a copy of the Associate Handbook, that you have read and fully understand these |



| Document | Effective Date | Document Attachment | Signature Type | Signed By | Signature Date | Signature Statement |
|---|---|---|---|---|---|---|
| | | pdf | | | | policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| Attendance Policy - Stores | 01/01/1900 | ATTENDANCE POLICY_Stores.pdf | e-signature | Terrence Lee (Terminated) | 08/07/2015 06:30:28 PM | By checking the box below, you acknowledge that you have received a copy of the Attendance Policy, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| Wage Payment Information | 01/01/1900 | Pay_Information_20140912.pdf | e-signature | Terrence Lee (Terminated) | 08/07/2015 06:30:28 PM | By checking the box below, you acknowledge that you have received information regarding the available wage payment options and reviewed it prior to choosing how you would be paid. |
| Code of Business Conduct and Ethics | 01/01/1900 | Code_of_Ethics_(FINAL).pdf | e-signature | Terrence Lee (Terminated) | 08/07/2015 06:30:28 PM | By checking the box below, you acknowledge that you have received a copy of the Code of Business Conduct and Ethics, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and procedures during your employment with the company. |
| STEPS | 01/01/1900 | STEPS - Workday_English_Small.pdf | e-signature | Terrence Lee (Terminated) | 08/07/2015 06:30:28 PM | By checking the box below, you acknowledge you have received the Steps to Effective Problem Solving (STEPS) packet materials. |
| Exchange Notice | 01/01/1900 | HCRStarterKit_Standalone_Exchange_Notice_v4_clean_082713 (2).pdf | e-signature | Terrence Lee (Terminated) | 08/07/2015 06:30:28 PM | By checking the box below, you acknowledge that you have received a copy of the Exchange Notice, that you have read and fully understand these policies and procedures, and that you will fully comply with these policies and |

**Maintain Worker Documents: Terrence Lee**
**(Terminated)**



| Document | Effective Date | Document Attachment | Signature Type | Signed By | Signature Date | Signature Statement |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | procedures during your employment with the company. |