UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERRENCE LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17-cv-02467-AGF |
| | ) |
| BURLINGTON COAT FACTORY OF MISSOURI, LLC,[1] | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendant's motion (ECF No. 18) to compel arbitration and to dismiss or, alternatively, stay these proceedings pending arbitration. For the reasons set forth below, the Court will grant Defendant's motion and will stay this case pending arbitration.

Plaintiff, an African American male, brought this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for alleged race discrimination suffered while he was employed as a Receiving Supervisor at Defendant's store, from August 2015 until his termination on November 5, 2015. Plaintiff timely filed his

---

[1] Plaintiff, who filed his complaint pro se, named as the Defendant "Burlington Stores." But Defendant asserts, and has provided an affidavit to substantiate, that "Burlington Stores" is not a legal entity and that Plaintiff was instead employed by Burlington Coat Factory of Missouri, LLC, a subsidiary of Burlington Stores, Inc. Plaintiff does not dispute this assertion. Therefore, the Court has substituted Burlington Coat Factory of Missouri, LLC as the proper Defendant, and will direct the Clerk of Court to change the docket sheet to reflect the same.

lawsuit on September 25, 2017, after receiving right-to-sue letters from the EEOC and the Missouri Commission on Human Rights. Plaintiff initially proceeded pro se, but the Court appointed counsel to represent him on November 13, 2017.

On February 12, 2018, Defendant filed this motion to compel arbitration of Plaintiff's claims. Defendant argues that, at the time Plaintiff filed his complaint, he was party to an enforceable arbitration agreement requiring him to arbitrate all covered employment-related disputes, including his Title VII claim in this case.

According to Defendant, in July 2014, its parent company began a dispute resolution program for employees of all of its affiliates and subsidiaries. The program was called "STEPS," and involved three steps: Step 1, discussing a concern with a supervisor or human resources representative; Step 2, submitting a written request for reconsideration to the STEPS program administrator; and Step 3, arbitration of legal claims. All store employees were automatically enrolled in the STEPS Program, but employees had the choice to opt out of Step 3, arbitration.[2] As part of its hiring and onboarding process, Defendant required new hires to sign into its human resources employee management system using a unique username and password to receive, review, and complete new hire documentation. This documentation included the STEPS Program Materials, which in turn included the Burlington Stores, Inc.'s Early Dispute Resolution Program Rules and Procedures (the "Arbitration Agreement").

The Arbitration Agreement states that it applies to Burlington Stores, Inc. and its affiliates, subsidiaries, and successors (defined collectively as the "Company"), and

---

[2] Employees could also skip Steps 1 and 2, and proceed straight to arbitration.

includes a one-and-a-half page introduction explaining the three steps described above.

This introduction describes the arbitration procedure in general, and states:

> In Step 3, you and the Company agree to arbitrate covered legal claims instead of bringing them to a court or jury trial. . . . You and the Company mutually agree to arbitrate covered disputes if you accept or continue employment with the company after the Effective Date (July 27, 2014). However, you also will be given the option to exclude yourself from arbitration by completing an Arbitration Opt-Out Form. If you do not elect to be excluded from arbitration within the timeframe set forth in the Arbitration Opt-Out Form, you and the Company are covered by arbitration. The choice is yours, and whether you choose to remain covered by arbitration or to exclude yourself will have no impact on your employment – positive or negative.

ECF No. 19-1 at 40. The Arbitration Agreement then includes the following specific provisions regarding arbitration:

> **Step 3: Arbitration – Rules and Procedures**
>
> \* \* \*
>
> 3. <u>Claims Covered</u>. Step 3: Arbitration applies to any dispute arising out of or related to your employment with or termination from the Company . . . , regardless of the date of accrual and survives after the employment relationship ends. Except as these Rules and Procedures otherwise provide, Step 3: Arbitration is intended to apply to the resolution of disputes that would otherwise be resolved in a court of law or before a forum other than arbitration, and you and the Company agree that any legal dispute or controversy covered by these Rules and Procedures . . . shall be resolved by binding arbitration.
>
> \* \* \*
>
> b. <u>Effective Date</u>: The Effective Date of this STEPS Program, including these Step 3 Arbitration Rules and Procedures is July 27, 2014. Unless you timely submit an Arbitration Opt-Out Form, any covered employment-related claims as described above that are brought on or after the Effective Date must be arbitrated pursuant to these Step 3 Arbitration Rules and Procedures. . . .

ECF No. 19-1 at 41-42. Title VII claims are explicitly listed under "Examples of Covered Claims." *Id.* at 42.

The Arbitration Agreement further provides that the employee has the right to be represented by counsel during arbitration proceedings, but if the employee chooses not to retain an attorney, Defendant will not be represented by an attorney either. *Id.* at 44. Further, Defendant will pay all costs and expenses related to the arbitration process, including up to $1,500 to assist an employee with attorneys' fees and incidental costs associated with the arbitration. *Id.* at 45.

The Arbitration Agreement includes the following separate paragraph regarding employee's right to opt out:

> 15. <u>Your Right to Opt Out of Arbitration</u>. Arbitration is not a mandatory condition of your employment at the Company, and therefore you may notify the Company that you wish to opt out and not be subject to Step 3 Arbitration. If you want to opt-out, you must notify the Company of your intention to opt out by submitting a signed and dated "Arbitration Opt-Out Form" (contained in the packet in which you received these Rules and Procedures and available on the Company's web portal under the Human Resources tab) to the STEPS Office Program Administrator, 1830 Route 130 North, Burlington, New Jersey 08016. In order to be effective, your Arbitration Opt-Out Form must be postmarked within 30 days of your receipt of these Step 3: Arbitration Rules and Procedures . . . . If you timely opt-out as provided in this paragraph, you will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to these Step 3 Arbitration Rules and Procedures. Should you not opt-out of arbitration within 30 days of your receipt of these Step 3: Arbitration Rules and Procedures . . . , continuing your employment constitutes mutual acceptance of them by you and the Company. You have the right to consult with counsel of your choice concerning these Step 3: Arbitration Rules and Procedures.

*Id.* at 48-49.

Defendant has submitted the affidavit of its Senior Associate Relations Manager,

Yazmin Hamilton, who attests based on personal knowledge that, on August 7, 2015, Plaintiff electrically signed, using his unique user name and password, an acknowledgement that he had received the Arbitration Agreement and an Opt-Out Form. Hamilton further attests that Defendant has never received an Opt-Out Form signed by Plaintiff. Defendant thus seeks to enforce the Arbitration Agreement.

In response, Plaintiff does not dispute that he received the Arbitration Agreement and Opt-Out Form and that he did not sign and timely return the Opt-Out Form. However, Plaintiff argues that he did not assent or agree to be bound by the Arbitration Agreement merely by acknowledging receipt of the agreement and failing to opt out. Further, Plaintiff argues that his continued at-will employment does not constitute consideration to support an enforceable arbitration agreement and that there was no other consideration for such an agreement here. Plaintiff contends that any mutual promise by Defendant to arbitrate its claims against Plaintiff was "illusory" because "there is no evidence that Defendant was precluded from unilaterally changing the terms of the ADR policy . . . ." ECF No. 24 at 6. Plaintiff also suggests that the terms of the arbitration program were "buried in the hundreds of online pages of onboarding materials." *Id.* at 4.

In reply, Defendant reiterates that the Arbitration Agreement constitutes a valid contract, which Plaintiff accepted by failing to timely opt out and which is supported by consideration in the form of Defendant's non-illusory mutual promise to arbitrate.

## **DISCUSSION**

The Federal Arbitration Act ("FAA") "establishes a liberal federal policy favoring arbitration agreements." *M.A. Mortenson Co. v. Saunders Concrete Co*., 676 F.3d 1153,

1156 (8th Cir. 2012). "A court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004); *see also* 9 U.S.C. §§ 2, 4. There is no dispute that the Arbitration Agreement in this case encompasses Plaintiff's employment discrimination claim, for the agreement broadly applies to all employment related disputes, including claims under Title VII. Therefore, the only question before the Court is whether the Arbitration Agreement is valid and enforceable.

The FAA provides that an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Therefore, federal courts look to state contract law to determine the validity of an arbitration agreement. *M.A. Mortenson Co.*, 676 F.3d at 1156-57. The parties agree that Missouri law applies here.

Under Missouri law, "[t]he essential elements of any contract, including one for arbitration, are offer, acceptance, and bargained for consideration." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014). "Offer and acceptance requires a mutual agreement. A mutual agreement is reached when the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time." *Baier v. Darden Rests.*, 420 S.W.3d 733 (Mo. Ct. App. 2014) (citations omitted). A mutual obligation to arbitrate by both parties to an arbitration agreement constitutes consideration for the agreement. *Greene v. Alliance Auto., Inc.*, 435 S.W.3d 646, 652 (Mo. Ct. App. 2014) ("[I]f a contract contains mutual promises, such that a legal duty or

liability is imposed on each party as a promisor to the other party as a promisee, the contract is a bilateral contract supported by sufficient consideration.").

Plaintiff accepted the offer to enter the Arbitration Agreement by failing to timely opt out. The Arbitration Agreement provided Plaintiff ample notice of his right to opt out, the means and deadline by which to do so, and the consequence of failing to opt out. By failing to timely opt out, Plaintiff manifested his acceptance of the Arbitration Agreement's terms. *See, e.g.*, *Karzon v. AT & T, Inc.*, No. 4:13-CV-2202 CEJ, 2014 WL 51331, at *2 (E.D. Mo. Jan. 7, 2014) ("By failing to opt out, he affirmatively accepted the arbitration agreement [under Missouri law]."); *see also Cicle v. Chase Bank USA*, 583 F.3d 549, 555 (8th Cir. 2009) (holding that an arbitration agreement that was deemed accepted by failure to opt out not unconscionable under Missouri law).

The Arbitration Agreement is also supported by valid consideration in the form of mutual promises to arbitrate claims. *Karzon*, 2014 WL 51331, at *3 ("Under Missouri law, a mutual agreement between employer and employee to arbitrate is enforceable.") (citing *McIntosh v. Tenet Health Sys. Hospitals, Inc./Lutheran Med. Ctr.*, 48 S.W.3d 85, 89 (Mo. Ct. App. 2001)). Contrary to Plaintiff's assertion, nothing in the Arbitration Agreement renders Defendant's promise to arbitrate its claims illusory; there is no provision allowing Defendant to unilaterally change the terms of the Agreement. *Cf. Baker v. Bristol Care*, Inc., 450 S.W.3d 770, 776 (Mo. 2014) (finding a mutual promise to arbitrate illusory where it was conditioned on the employer's "unilateral right to amend, modify or revoke th[e] [arbitration] agreement upon thirty (30) days' prior written notice to the Employee").

Finally, although Plaintiff does not explicitly assert one, the Court would reject any legal argument based on the prominence (or alleged lack thereof) of the terms of the Arbitration Agreement. The Arbitration Agreement is in the same size font as the other documentation provided to Plaintiff, the terms of the agreement and the right to opt out are introduced by boldfaced headings and are explained in relatively simple language, and the consequences of failing to opt out are explained clearly. *Cicle*, 583 F.3d at 554 (8th Cir. 2009) (rejecting an unconscionability argument where, although "the terms of the agreement were in fine print, . . . the arbitration provision was in the same size font as the rest of" the agreement, and the arbitration provision was "introduced by a boldfaced heading and a paragraph in all-uppercase font explaining the litigation rights that were being waived").

In sum, the Arbitration Agreement is a valid and enforceable contract. Under the FAA, Plaintiff's claims are thus referable to arbitration. Rather than dismiss the case, the Court will stay the action until the arbitration proceedings are concluded. *Fleischli v. North Pole US, LLC*, 4:12CV1618 CDP, 2013 WL 1965120, at *14 (E.D. Mo. May 10, 2013) (citing 9 U.S.C. § 3).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to compel arbitration and to dismiss or, in the alternative, stay proceedings is **GRANTED in part**, to the extent that the Court will compel arbitration and stay these proceedings pending arbitration. ECF No. 18.

**IT IS FURTHER ORDERED** that this case is **STAYED** and shall be deemed closed administratively, for statistical purposes only, pending a resolution of the arbitration.

**IT IS FURTHER ORDERED** that the appointment of Mark C. Milton as pro bono counsel for Plaintiff shall continue through the arbitration process.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report within **14 days** of a decision regarding the outcome of the arbitration proceedings.

**IT IS FURTHER ORDERED** that the Clerk of Court shall change the name of the Defendant in the case caption and docket sheet to Burlington Coat Factory of Missouri, LLC.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 21st day of March, 2018.